Grace M. POWELL, Executrix of the Estate of O. E. Powell, Deceased, Appellant,

v.

Ralph C. GRANQUIST, District Director of Internal Revenue, Appellee.

No. 15447.

United States Court of Appeals Ninth Circuit.

Jan. 13, 1958.

Arthur D. Jones, Humphries & Jones, Frederick A. Jahnke, Portland, Or., for appellant.

Charles K. Rice, Asst. Atty. Gen., Grant W. Wiprud, Davis W. Morton, Jr., Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., C. E. Luckey, U. S. Atty., Portland, Or., for appellee.

Before POPE and CHAMBERS, Circuit Judges, and EAST, District Judge.

EAST, District Judge.

### Jurisdiction

The Appellant, Grace M. Powell, is the duly appointed, qualified and acting Executrix of the Estate of O. E. Powell (Powell), who died on July 16th, 1954.

Deficiencies of income tax for the years 1937 through 1945, all inclusive, were assessed by the Commissioner of Internal Revenue for the District of Oregon (Commissioner), the predecessor in interest to the Appellee above named. All of the amounts in dispute in these proceedings were paid to the Commissioner by Powell and/or the Appellant. Timely claims for refund of such payments were made, however, the Appellee timely and in due form and manner disallowed said claims. This action was timely commenced in the District Court below for the recovery of all amounts in controversy.

Jurisdiction was conferred on the District Court by Section 1340, Title 28 U. S.C. and on this Court by Section 1291 of said Title.

We are confronted with the question whether the District Court erred in concluding and holding that deficiencies in income taxes assessed by the Commissioner against Powell and collected by the Appellee herein for the years 1937 through 1945, inclusive, were due to fraud with intent to evade the tax within the meaning of Section 293(b). Internal Revenue Code of 1939,[1] and that

---

1. Additions to the tax in case of deficiency—

"§ 293(b) Fraud. If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d) (2)." 26 U.S. C.A. (I.R.C.1939) § 293.

the collection of $12,880.39 from Powell and/or the Appellant herein by the Appellee of the amount of the penalty imposed by Section 293(b), supra, for the said years was proper. The Appellant insists that the Appellee failed to sustain its burden of proving fraud by clear and convincing evidence.

### Statement

The factual background of this case is aptly set out in the District Court's opinion and will not be fully reiterated here. Powell v. Granquist, 1956, 146 F.Supp. 308. Powell filed no federal income tax returns for the years 1937–1945 inclusive. Appellant concedes a deficiency in income tax for this period of $25,760.74.[2] She also concedes a 25% penalty under Section 291, Title 26 U.S.C.A. for willful failure to file returns and a 10% penalty under Section 294(d), Title 26 U.S.C.A. for failure to file declarations of estimated tax, but she contends that Powell was not subject to the 50% fraud penalty under Section 293(b), Title 26 U.S.C.A.

2. "During the years 1937 to 1945, taxpayer owned and operated a number of gasoline service stations, later leasing them to the two sons, Lee G. Powell and Vincent O. Powell, receiving from them rental incomes. Also taxpayer, at various times during that period, had 19 different properties that he rented, and also during that time, he made in excess of 30 real estate sales, farms and residences, and also had interest income on contracts and commissions from realty sales. In order to determine taxpayer's income, it was necessary that the Internal Revenue agent search public records of four counties, determine from the sons how much they leased the stations for, and contact real estate agents and other parties to the various transactions. This was necessary because taxpayer had indicated that he kept no records."

3. See direct testimony of Lee G. Powell, Powell's son (R. 141):
"Q. During those years in question, was the subject of taxes ever discussed? A. Yes.

"Q. What statements did he make to you, during those years, concerning income taxes? A. I knew that he wasn't paying his income tax and I asked him about it and told him that he should be paying, that it was the thing for him to

### On the Merits

The record indicates three salient points in the evidence:

1. Powell had filed federal income tax returns for the years 1933, 1934 and 1936, and no claim is made that he was unaware of the existence of a revenue law or that he was unaware of the fact that he was earning taxable income during the years following (1937 to 1945).

2. The only reason advanced by Powell for his failure to file returns for the years in question was that he did not believe in the way the government was wasting money. Powell's son and an Oregon State Tax Commission agent both testified that they had informed Powell of his duty to file returns and to pay taxes on several occasions, and the only answer he gave for his failure to so do, was an explanation to his son that while he believed in taxation, he did not approve of the manner in which the money was spent by the government, that he considered the government wasteful.[3]

do, and he said he knew it but that he didn't pay because he didn't believe in the way the Government was wasting the money."
See direct testimony of Harold Parsons, Internal Revenue Agent:
"Q. Did Mr. Powell ever state to you at any time his reason for failure to file income tax returns for the years 1937 to 1945? A. Yes.
"Q. What reasons did he state? A. On at least two occasions he made the statement that he was not in sympathy with the administration and did not like the way the Government was run and did not believe in paying income taxes."
See direct testimony of Daniel S. Forsberg, Internal Revenue Agent:
"Q. Did Mr. Powell ever state to you, at any time, any reason for his failure to file income tax returns for the years 1937 to 1945? A. Yes.
"Q. What was the reason he gave? A. At least on two occasions and in the presence of the joint examining special officer, Parsons, the taxpayer said that he didn't believe in the way the Country was being run and he didn't believe in paying income taxes, and he was strongly thinking of getting his things gathered together and moving out of the country and going to South America where he didn't have to pay taxes."

3. Powell made only a colorable attempt to cooperate with revenue accountants who were attempting to reconstruct his income for the years in question. Although Powell had kept no formal books as such, he had retained cancelled checks, bank statements and real estate contracts and deeds. Upon a request by revenue agents to produce his books and records he complied by producing his cancelled checks and bank statements only. Powell held a real estate broker's license from 1943 on, and revenue agents were able to uncover in excess of thirty real estate transactions made by Powell in his own right, by ferreting out the public records. In this regard an excerpt from the testimony of Revenue Agent Forsberg seems appropriate:

"Q. Aside from the cancelled checks and the bank statements, what documents and information, if any, was made available to you by Ora E. Powell? A. He made available to us specific contracts upon our specific request, after it became apparent that we had all the information regarding that particular sale.

"Q. Did you ever make any general request for contracts or information? A. Yes, sir, we certainly did.

"Q. And what was his response to that request? A. That he kept no such records and that he had no such records, and the general statement to the effect that he didn't see why he should, more or less, jeopardize himself in any way. As far as getting contracts and deeds and that, it became evident that he had them all the time but we were not given them until we specifically asked for each one as we discovered them."

Counsel for the Appellant makes much of the fact that none of the records which Powell eventually, albeit reticently, turned over to the Revenue Service had been altered, and that no attempt had been made by Powell to destroy or alter his cancelled checks or bank statements. There is of course no question but that destruction and alteration of records by a taxpayer is deemed a clear badge of fraud, however we cannot agree with counsel that lack of evidence of destruction or alteration makes impossible a finding of fraud. The record further indicates that Powell employed a Certified Public Accountant to peruse his records and papers for the purpose of determining his income for the years in question, this conduct, under some circumstances might be interpreted as evidence of good faith, however in this case it appears that Powell pursued such a course only in conjunction with his protest of the deficiency as originally determined by the Internal Revenue Service, and for the purpose of reducing the amount of the deficiency so found.

Counsel earnestly urges that the facts in the instant case are on all fours with the facts found in First Trust & Savings Bank of Davenport, Iowa v. United States, 8 Cir., 1953, 206 F.2d 97. In that case the Circuit Court reversed a finding of fraud under Section 293(b), supra, stating that there was no proof of any *affirmative* act or fraud on the part of the taxpayer (Kraftmeyer) to evade the taxes upon which he had filed no returns for the period 1937 to 1945 inclusive. Assuming without deciding that what was there said regarding the criminal penalties provided for in Section 145 of the Internal Revenue Code, 26 U.S.C.A. § 145 as interpreted by the Supreme Court in Spies v. United States, 1943, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 was a proper analogy to be applied to the civil penalties provided for in Sections 291 and 293 with which we are presently concerned, still we feel that the instant facts are sufficiently distinguishable from those in the First Trust & Savings case to allow an opposite conclusion herein. In that case as in this one, the taxpayer conceded the propriety of a 25% penalty under Section 291 for failure to file due to willful neglect and not due to reasonable cause. In that case, like this one, the taxpayer had earned a considerable amount of taxable income (a major portion of which was

capital gain) during the years in question and had failed to keep a set of books or business records. But in that case, unlike this one, taxpayer had never filed an income tax return prior to 1937, and neither had he ever been told by anyone that he should have filed returns until the Revenue Service discovered his deficiency some time after the year 1945. Secondly, the taxpayer in that case genuinely thought that he was not earning taxable income, this feeling being based on taxpayer's own conception of taxable income. The divergence of opinion between the taxpayer and the Revenue Service as to what amounted to taxable income, of course, was of no mitigation as to the penalty under 291; however, the Court felt that no fraudulent intent to avoid taxes had been shown. Thirdly, upon being informed of the delinquency by the Revenue Service, taxpayer employed an attorney and cooperated with the Revenue Agents to produce a full showing of all his money transactions throughout the years in question.

We feel that these differences upon the facts are substantial and indicate a material distinction between the state of mind and attitude of Kraftmeyer, a man of little business experience and Powell, a man of wide and extensive financial experience and business acumen.

The Appellant herein urges that no taxpayer may be found to have fraudulently intended to avoid a tax within the meaning of Section 293(b) if no returns have been filed by the taxpayer and further, that for any such failure to file, the civil penalties under Section 291 are the government's exclusive remedies, and cites First Trust & Savings Bank, supra.[4]

If the foregoing proposition and authority means that one who files no return at all cannot be found guilty of a fraudulent intention to evade a tax then to such a proposition we cannot agree. For a taxpayer to be ill-advised, neglectful, stubborn or a passive resistant in his duty to file a return is one thing, but for a taxpayer to be knowingly and wilfully defiant, withholding and dedicated to a plan of nonpayment of taxes for which he knows he is liable is quite "a horse of another color."

"Fraud implies bad faith, intentional wrongdoing and a sinister motive." Davis v. Commissioner, 10 Cir., 1950, 184 F.2d 86, 87.

The intent of the required intentional wrongdoing is stated to be the specific purpose to evade a tax believed (known) to be owing. Mitchell v. Commissioner, 5 Cir., 1941, 118 F.2d 308, 310; Wiseley v. Commissioner, 6 Cir., 1950, 185 F.2d 263, 266.

"Consistent, substantial understatements of income for several years, as was true here, is highly persuasive evidence of intent to defraud the government. Rogers v. Commissioner, 6 Cir., 1940, 111 F. 2d 987; [Kurnick v. Commissioner, 6 Cir., 1956, 232 F.2d 678.]" Cited in Baumgardner v. Commissioner, 9 Cir., 251 F.2d 311, 322.

As is true here, knowingly refusing to make any statement of income for nine years would seem to be at least of equal

---

4. 206 F.2d 97 at page 100

"The cases that are cited to us here and relied on by the government where taxpayers have made false returns and have been held criminally and civilly for 'attempt to evade tax' and for 'fraud to which tax deficiency was due', are manifestly irrelevant. Of course, the filing of false returns is affirmative fraudulent conduct which is adapted to bring about deficiency of tax and an intent to evade tax may be inferred from it. As the Court of Appeals for the Third Circuit succinctly put it, 'the man who files a wilfully false return has endeavored to mislead his government. He creates the appearance of having complied with the law, whereas his neighbor who has filed no return does no such thing. Not only has he created the appearance of complying, but that apparent compliance stands a good chance of remaining unattacked, for the tax authorities cannot possibly audit every taxpayer's return every year * * * The law has always distinguished between failing to disclose useful information and making a disclosure which is a lie.' United States v. Croessant, 3 Cir., 178 F.2d 96, 97, q. v."

persuasiveness in evidencing an intent to defraud the government. There is nothing in the applicable statutes to the contrary, therefore it must be accepted that the Congress intended the ultimate conclusion of "fraud" to be as ordinarily understood in the law. We agree that fraud in this type of case must be established by clear and convincing proof. Rogers v. Commissioner, supra. Jemison v. Commissioner, 5 Cir., 1930, 45 F. 2d 4; the burden to establish by the required quantum of evidence such fraud is upon the government. Ohlinger v. United States, 9 Cir., 1955, 219 F.2d 310; and this required standard may be satisfied by circumstantial evidence. Owens v. United States, D.C.Ark.1951, 98 F. Supp. 621, affirmed 8 Cir., 1952, 197 F.2d 450.

We are of the opinion that the evidence abundantly sustains the finding of the District Court that Powell's deficiency is due to fraud with intent to evade tax, within the meaning of Section 293(b) of the Internal Revenue Code.

As was stated in DeFranco v. Commission, 9 TCM 1159, (CCH Dec. 18,030(m) 1950), citing Abraham Wolf, 14 T.C. 751:

> "Where over a course of years an intelligent taxpayer and business man had received income in substantial amounts, as shown by this record, and has failed to report that income, and where no books or records were kept by him and no tenable explanation was offered for the failure to report the income received, the burden of the respondent in our judgment is fully met * * * *"

In the DeFranco case, taxpayer had never filed any returns, and that action resulted from a determination of the Commissioner that a deficiency existed for the years 1939 to 1949, inclusive, what was there said in sustaining a fraud penalty under Section 293(b), even though a failure to file penalty under Section 291 had also been sustained, might well be repeated as to this taxpayer:

> "Petitioner's action with regard to his income tax returns indicate a reckless abandon for the purpose of defeating the income tax laws. His claim of ignorance does not stand up in the light of all the evidence showing business acumen which has achieved for himself large amounts of net income of which to some considerable extent, at least, he must have been aware.
>
> "Even if we believed Domenic's professed ignorance of income tax laws prior to 1945 or 1946 he was apprised of the necessity for filing returns and yet nothing was done until March, 1947 which time approximates the preliminary investigation of petitioner's tax liabilities. (cases cited.) Moreover, Domenic failed to disclose substantial amounts of income which were derived from grape sales in Boston, Massachusetts, in 1945 and 1946. It was only after respondent knew of these deposits in Boston bank accounts that Domenic 'found' these bank statements and presented them to his accountant at the time of the hearing, or shortly before. Domenic's dealing with respondent's agents during the course of the investigation of his tax liability showed the cooperation was had only after considerable resistance. Complete cooperation between petitioners and respondent's agents was never had."

It will be observed that Domenic DeFranco unconvincingly attempted to plead lack of knowledge of the tax laws, while Powell in the instant case openly defied the tax laws, the existence of which he was well aware, as the Tax Court chose not to believe DeFranco it would appear that he essentially occupied the same position in the eyes of the Tax Court as does Powell in this case. Recognizing that in determining the existence of fraud, it is the state of mind of the taxpayer during the period in question with which we are concerned, it is difficult to see why open defiance of

a known law, with no attempt being made to hide such defiance, should any more negative the existence of fraudulent intent than where defiance in fact, as in DeFranco, is subsequently guised under a claim of ignorance.

We are not unmindful of the fact that under the present Code the counterparts of Section 291 and Section 293 are made mutually exclusive. See Section 6653(d), Internal Revenue Code 1954, 26 U.S.C.A. § 6653(d). Be that as it may, this was not the rule under the 1939 Code, as the following cases [5] attest, wherein fraud penalties were sustained in situations wherein the taxpayer had not filed any returns for the years in question.

Affirmed.

5. Kessler v. Comm., 39 B.T.A. 646 (CCH Dec. 10,649, 1939); Moriarty v. Comm., 18 T.C. 327 (CCH Dec. 18,973, 1952) affirmed 1953, 93 U.S.App.D.C. 413, 208 F. 2d 43; 53–2USTC 9600; Hendrick v. Comm., 7 TCM 364 (CCH Dec. 16,451 (M) 1948); Tyson v. Comm., 9 TCM 162 (CCH Dec. 17,533(M) 1950); Rice v. Comm., 12 TCM 596 (CCH Dec. 19,-711(M) 1953); Leigh v. Comm., 13 TCM 664 (CCH Dec. 20,463(M) 1954); Richards v. Comm., 15 TCM 885 (CCH Dec. 21,856(M) 1956); Jones v. Comm., 25 T.C. 1100 (CCH Dec. 21,590 1956).