LAWRENCE M. JARRATT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Jarratt v. Commissioner
Docket No. 7028-73.
United States Tax Court
T.C. Memo 1977-41; 1977 Tax Ct. Memo LEXIS 400; 36 T.C.M. (CCH) 179; T.C.M. (RIA) 770041; February 22, 1977, Filed Richard L. Carico, for the petitioner. *401 J. E. LaHart, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined deficiencies in petitioner's Federal income taxes, and additions to taxes as follows: Year
Deficiency
Sec. 6653(b) [1]
Sec. 6654
1963
$14,085.32
$7,042.66
$ 0
1964 [2]
22,330.71
11,156.36 [3]
625.26
In the event we do not sustain his determination with respect to fraud, respondent has, in the alternative, determined additions to taxes for failure to timely file returns (section 6651(a)) and negligence (section 6653(a)). Petitioner does not contest these additions to taxes *402 nor the addition to tax imposed under section 6654 (failure to pay estimated tax). Because of these and other concessions made by the parties, the only issue to be decided is whether any part of the underpayment of tax for 1963 and 1964 was due to fraud. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioner resided in Grass Valley, California at the time he filed his petition herein. Prior to 1963, petitioner was employed as a heavy equipment operator by various construction companies. In May 1963 he began his own business as an excavation contractor. He operated the business as a sole proprietorship under the name of Tierra Grading from May 1, 1963 through August 25, 1967. Petitioner's sister, a book-keeper, and Sam Lovoi, a public accountant, were employed by petitioner to establish and maintain necessary business records and to prepare employment tax, estimated tax and income tax returns for Tierra Grading and for petitioner. Sometime between September 15, 1963 and January 15, 1964 petitioner met with Mr. Lovoi to discuss the general financial position of Tierra Grading, the necessity of making estimated tax *403 payments and the probability of petitioner owing federal income taxes for 1963. During this meeting Mr. Lovoi prepared a declaration of estimated tax for 1963 in the amount of $2,000. This figure represented an amount which petitioner felt he could pay but was less than the amount Mr. Lovoi had estimated was due. Thereafter on January 16, 1964, petitioner remitted $2,000 to the Internal Revenue Service as an estimated payment on his 1963 income taxes. Mr. Lovoi subsequently prepared petitioner's individual income tax return for 1963 and had it delivered to petitioner prior to April 15, 1964. The balance due in income taxes as reflected on the return was $4,487.56. Mr. Lovoi also prepared petitioner's joint income tax return for 1964 [4] and had it delivered to petitioner prior to April 15, 1965. The balance due in income taxes reflected on that return was $8,619.09.During this period petitioner was aware that he could file the returns without paying the taxes owing. However, petitioner never filed the returns and never paid the remainder of the taxes owing for 1963 nor any of the taxes owing for 1964. In addition, petitioner did not file California income tax returns for 1963 *404 and 1964. In late 1965 or early 1966 petitioner contacted an attorney specializing in tax practice and requested his advice and assistance with regard to his unpaid 1963 and 1964 federal income taxes. Petitioner told this attorney that he had filed his returns for 1963 and 1964 but had failed to pay the taxes shown to be due. The attorney made several inquiries of the Internal Revenue Service without mentioning petitioner's name, but performed no further legal services for petitioner because petitioner decided that he could not afford the estimated attorney's fees. Prior to his discussions with the attorney, petitioner had not contacted the Internal Revenue Service with regard to his delinquent tax payments or attempted to begin payment of the taxes owing for 1963 and 1964. Petitioner attributes his failure to contact the Service and to pay his 1963 and 1964 taxes to his belief that the Service was giving him a "breather" in which to scrape together the money to pay his taxes. Following his discussion with the attorney, petitioner still made no attempt to contact the Service or to pay his 1963 and 1964 taxes.On or about April 15, 1966, petitioner *405 filed a joint return for 1965 together with a payment of $5,268.41. This return was also prepared by petitioner's accountant, Mr. Lovoi.
On April 5, 1967, a revenue agent contacted petitioner's wife regarding delinquent third quarter 1966 employment taxes of Tierra Grading. On the same date, the revenue agent asked Mrs. Jarratt if she and petitioner had filed their income tax returns. The revenue agent subsequently determined that the Internal Revenue Service had no record of income tax returns being filed by petitioner for the years 1963 and 1964. On August 25, 1967, petitioner filed a voluntary petition in bankruptcy with the United States District Court for the Northern District of California. On that petition, petitioner listed as a priority debt taxes due and owing to the United States in the amount of $13,000. That amount approximated the taxes due as shown on petitioner's unfiled tax returns for 1963 and 1964. On September 21, 1967 petitioner was contacted by a special agent with regard to his unfiled 1963 and 1964 tax returns. On that occasion, and again on December 14, 1967, petitioner stated that he had filed returns for 1963 and 1964 but had not paid the taxes *406 he owed for either year. Petitioner offered as an explanation for his failure to pay the taxes that he had used available funds for the purchase of business equipment. Petitioner cooperated with the special agent in providing his business records and copies of his unfiled 1963 and 1964 income tax returns. As a result of this investigation of petitioner's tax liability for 1963 and 1964, he was charged and convicted (after a jury trial) of willfully failing to file income tax returns for 1963 and 1964 in violation of section 7203. [5]
*407 Petitioner had testified at the criminal trial that he had filed returns for 1963 and 1964 but had not paid the taxes owing. He also testified that he thought that the Service had not contacted him with respect to his tax liability because they were giving him a "breather." During the years in issue petitioner withdrew for his personal use approximately one half of the net profits derived from the operation of Tierra Grading. The remainder of the net profits was reinvested in machinery and equipment. From May 1, 1963 through April 30, 1964, petitioner withdrew and charged to his drawing account $23,339.03. Included in these withdrawals was a check for $3,075.80 drawn on March 18, 1964, for the purchase of petitioner's home and a check for $2,000 drawn on January 12, 1964 for payment of petitioner's 1963 estimated Federal income tax. From May 1, 1964 through April 30, 1965, petitioner withdrew and charged to his drawing account $24,451.70. On April 30, 1965, Tierra Grading had a balance of $8,812.72 in its account at the First Valley Bank. During 1963 and 1964 petitioner's taxable income was $23,930.14 and $50,061.39, respectively. Respondent in his statutory notice of *408 deficiency determined that all or part of the underpayment of tax for 1963 and 1964 was due to fraud. Respondent also asserted an addition to tax for 1964 for underpayment of estimated tax. OPINION The sole issue is whether petitioner is liable for additions to tax for fraud. Section 6653(b) imposes a 50 percent addition to tax for any year in which any part of an underpayment of tax for that year is due to fraud. The existence of fraud is a question of fact to be determined upon consideration of the entire record. William G. Stratton,54 T.C. 255, 284 (1970). The burden of proving fraud is on respondent (section 7454(a)) and clear and convincing evidence is required to carry this burden. Rule 142(b), Tax Court Rules of Practice and Procedure; Baumgardner v. Commissioner,251 F. 2d 311, 322 (9th Cir. 1957); Anson Beaver,55 T.C. 85, 92 (1970). To prove fraud, respondent must show that the taxpayer acted with the specific intent to evade a tax believed to be owing. Stoltzfus v. United States,398 F. 2d 1002, 1004 (3rd Cir. 1968), cert. denied 393 U.S. 1020 1020 (1969); Powell v. Granquist,252 F. 2d 56, 60 (9th Cir. 1958); *409 Mitchell v. Commissioner,118 F. 2d 308, 310 (5th Cir. 1941); Anson Beaver,supra at 92-93. The requisite specific intent may be inferred from any conduct calculated to mislead or conceal. Anson Beaver,supra at 92-93. Such conduct includes the willful failure to file a return as well as the deliberate filing of a false return. Stoltzfus v. United States,supra;Powell v. Granquist,supra;Anson Beaver,supra.
While willful failure to file does not in itself, and without more establish fraud, willful failure to file for an extended period of time is "highly persuasive evidence of an intent to defraud." Lord v. Commissioner,525 F. 2d 741, 745 (9th Cir. 1975); Powell v. Granquist,supra, 60-61. Generally, the additional factors which will support a finding of fraudulent intent to evade tax are: the taxpayer's knowledge of the tax system and of his obligation to file and pay tax, Powell v. Granquist,supra, 60-61, First Trust and Savings Bank v. United States,206 F. 2d 97 (8th Cir. 1953), *410 Irolla v. United States,390 F. 2d 951, 954 (Ct. Cl. 1968), the insufficiency of the taxpayer's explanation of the circumstances resulting in his failure to file and pay tax, Powell v. Granquist,supra, 60-61, Anson Beaver,supra, 93, Albert Gemma,46 T.C. 821 (1966), the taxpayer's failure to cooperate with the revenue agents conducting the investigation of his tax liability, Powell v. Granquist,supra, 60, the inadequacy of the taxpayer's books and records, Powell v. Granquist,supra, 59-60, and the number of years for which the taxpayer failed to file and pay tax, Stoltzfus v. United States,supra, 1005, Powell v. Granquist,supra, 60-61, Anson Beaver,supra.
Viewing the record as a whole, and taking into account the facts and circumstances surrounding petitioner's failure to file and pay tax, we conclude that respondent has sustained his burden of proof by clear and convincing evidence for each of the years in issue.
During the years in issue petitioner knew that he was required *411 to file estimated tax and income tax returns and pay taxes. He was also aware that he could file income tax returns without payment of the tax. His accountant prepared and delivered to him his income tax returns for 1963 and 1964. Nonetheless, petitioner failed to file these returns and pay the taxes due. Instead, petitioner withdrew approximately one-half of the net profits of Tierra Grading for his personal use and reinvested the remainder of the net profits in excavation equipment. At petitioner's criminal trial for willful failure to file returns for 1963 and 1964 as well as in interviews with revenue agents, petitioner claimed that he had filed returns for both years. Moreover, he testified that he did not contact the Service with respect to payment of his taxes thereafter because he thought the Service was giving him a "breather" in which to scrape together the money to pay the taxes due. Despite this testimony, petitioner was convicted of willfully failing to file returns for 1963 and 1964. This conviction collaterally estops him from denying his failure to file returns was willful. Loren R. Gajewski, 67 T.C. , (1976). These circumstances surrounding *412 petitioner's failure to file returns clearly reflect that such failure was more than the mere intentional disregard of respondent's rules and regulations. On the contrary, such failure to file was a step in a plan to evade payment of taxes known to be owing. Loren R. Gajewski,supra.
Petitioner, however, contends that these factors alone do not constitute clear and convincing evidence of intent to defraud. He argues that in the absence of the "usual badges of fraud" such as non-cooperation with the auditing agents and inadequate books and records, a finding of fraud is not justified. We disagree. A finding of intent to evade tax is not confined to situations where overt actions effectuate the fraudulent scheme. Powell v. Granquist,supra. Where knowledge is present, subtle conduct will support a finding of fraud. Stoltzfus v. United States,supra, 1005. Here, though petitioner did maintain adequate books and records, his failure to file returns or advise respondent in any other manner of his tax liability had the effect of misleading respondent and concealing his tax liability. Moreover, petitioner cooperated with respondent *413 only after he had been caught. See Anson Beaver,supra, 93. There is no evidence that petitioner made any attempt to disclose the non-payment of taxes in April 1967 when initial inquiries were made by a revenue agent. Petitioner's cooperation did not begin until September 1967 when he was contacted by a special agent. Petitioner also contends that since he paid an estimated tax payment for 1963 in January 1964, contacted an attorney in late 1965 or early 1966 with respect to his non-payment, and disclosed his income tax obligation on his petition in bankruptcy in August 1967, there was no intention to evade tax. However, the payment in January 1964 predated implementation of petitioner's plan of non-payment. Though petitioner contacted an attorney with respect to his non-payment, he failed to follow through and disclose his non-filing and non-payment to the Service. Finally, the petition in bankruptcy filed in August 1967, was filed four months after the Service's initial inquiry into petitioner's tax liability. Also, inclusion of his tax obligation on his bankruptcy petition benefitted petitioner by reducing the amount of his assets available to his general *414 creditors. In view of the foregoing, we hold that respondent has shown by clear and convincing evidence that petitioner is liable for additions to taxes for fraud under section 6653(b) for each of the years in issue. Because of concessions made by the parties, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue. ↩
2. These are the amounts reflected in Respondent's Amendment to Answer. The figures for 1964 reflected in the statutory notice are as follows: ↩ Deficiency
Sec. 6653(b)
Sec. 6654
$13,643.99
$6,822.00
$369.05
3. Respondent in his Amendment to Answer computed the addition to tax under section 6653(b) as shown above. Our computations reflect that the addition to tax under section 6653(b) should be $11,165.36.↩
4. Petitioner married in April 1964.↩
5. Section 7203 provides: Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution.↩