STANLEY GROSSHANDLER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5260–76.  Filed October 2, 1980.

*Richard M. Kates*, for the petitioner.
*Francis J. Emmons*, for the respondent.

DAWSON, *Judge*: Respondent determined the following deficiencies in petitioner's Federal income taxes and additions to tax:

1

| Year | Deficiency | Addition to tax sec. 6653(b) | Addition to tax sec. 6654[1] |
|------|-----------|------------------------------|------------------------------|
| 1963 | $4,203.84 | $2,101.92 | 0 |
| 1964 | 17,464.89 | 8,732.45 | $443.69 |
| 1965 | 5,872.99 | 2,936.50 | 157.19 |
| 1966 | 9,862.97 | 4,931.48 | 264.81 |
| 1967 | 30,210.14 | 15,105.07 | 966.72 |
| 1968 | 3,148.89 | 1,574.45 | 98.55 |
| 1969 | 25,681.26 | 12,840.63 | 755.87 |

In the alternative, the respondent has alleged that, if the Court should decide that the petitioner is not liable for the section 6653(b) additions to tax for fraud for any year at issue, the petitioner is liable for the additions to tax for delinquency under section 6651(a) and for the additions to tax for negligence under section 6653(a) with respect to each year.

The parties have agreed as to the amounts of taxable income received by the petitioner for all of the years before the Court. Oral concessions have been made by the petitioner. The issues remaining for our decision are:

(1) Whether that portion of petitioner's direct testimony relating to his memory, as allegedly refreshed by hypnosis, is admissible in the circumstances present in this case and, if so, the weight that should be given to such testimony.

(2) Whether the petitioner failed to file Federal income tax returns for the years 1963, 1964, and 1965.

(3) Whether the assessment and collection of petitioner's Federal income taxes for each of the taxable years 1963, 1964, and 1965 are barred by the statute of limitations.

(4) Whether any part of the underpayment of income tax for each of the years 1963 through 1969 was due to petitioner's fraud with intent to evade tax.

(5) Whether, alternatively, the petitioner is liable for the additions to tax under sections 6651(a) and 6653(a), respectively, for the years 1963 through 1969.

(6) Whether the petitioner is liable for the additions to tax under section 6654 for failure to make estimated tax payments for each of the years 1964 through 1969.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated.

## FINDINGS OF FACT

Some of the facts are stipulated. The stipulations of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Stanley Grosshandler (petitioner) was a legal resident of Highland Park, Ill., during the taxable years 1963 through 1969 and on June 14, 1976, when he filed his petition in this case. The statutory notice of deficiency herein was mailed to petitioner on March 15, 1976.

During the years 1963 through 1969, the petitioner was an attorney who was licensed to practice law by the State of Illinois. He maintained a law office at 4 South Genesee Street, Waukegan, Ill. Except for a short period of time during late 1969 when petitioner was employed by the real estate development company of Kaufman & Broad Homes, Inc., he was actively engaged in the practice of law as a sole practitioner.

During the taxable years 1963 through 1969, the petitioner's legal practice and his employment at Kaufman & Broad Homes, Inc., generated the following gross receipts:

| Year | Gross receipts |
|------|----------------|
| 1963 | $27,924.00 |
| 1964 | 62,185.50 |
| 1965 | 68,917.85 |
| 1966 | 60,368.12 |
| 1967 | 93,883.34 |
| 1968 | 41,630.99 |
| 1969 | 64,136.03 |
| Total | 419,045.83 |

During the taxable years 1963 through 1969, the petitioner incurred the following business expenses in the operation of his law office:

| Year | Business expenses |
|------|-------------------|
| 1963 | $10,870.44 |
| 1964 | 36,386.02 |
| 1965 | 48,368.88 |
| 1966 | 41,664.00 |
| 1967 | 72,544.49 |

| | |
|---|---|
| 1968 | $22,291.25 |
| 1969 | 29,383.64 |
| Total | 261,508.72 |

During the taxable years 1963 through 1968, the petitioner's distributive share of losses generated by a real estate partnership were as follows:

| Year | Petitioner's share of partnership loss |
|---|---|
| 1963 | $658.44 |
| 1964 | 292.89 |
| 1965 | 215.79 |
| 1966 | 287.19 |
| 1967 | 363.82 |
| 1968 | 186.53 |
| Total | 2,004.66 |

For the taxable years 1963 through 1969, the petitioner's adjusted gross income was as follows:

| Year | Adjusted gross income |
|---|---|
| 1963 | $16,395.12 |
| 1964 | 25,506.59 |
| 1965: | 20,333.18 |
| 1966 | 18,416.93 |
| 1967 | 20,975.03 |
| 1968 | 19,153.21 |
| 1969 | 34,752.39 |
| Total | 155,532.45 |

For the taxable years 1963 through 1969, the petitioner had the following amounts of allowable itemized deductions:

| Year | Allowable itemized deductions |
|---|---|
| 1963 | $3,183.54 |
| 1964 | 2,800.24 |
| 1965 | 2,923.56 |
| 1966 | 2,395.42 |
| 1967 | 3,727.51 |

```
1968........................ $4,881.19
1969........................  3,299.66
   Total..................... 23,211.12
```

During the taxable years 1963, the petitioner was entitled to claim dependency exemptions for himself, his wife, and three dependent children. During the remaining years at issue, he was entitled to claim dependency exemptions for the same individuals plus one additional child.

Petitioner's taxable income for the years 1963 through 1969 was as follows:

| Year | Taxable income |
|------|----------------|
| 1963 | $10,211.58 |
| 1964 | 19,196.35 |
| 1965 | 13,809.62 |
| 1966 | 12,421.51 |
| 1967 | 13,647.52 |
| 1968 | 10,672.02 |
| 1969 | 27,852.73 |
| Total | 107,721.33 |

Petitioner obtained his undergraduate degree from Roosevelt College, Chicago, Ill. He also did some of his undergraduate study at Ohio State University and the University of Pittsburgh. He obtained his law degree at Northwestern University School of Law in 1953.

After graduation from law school, the petitioner was employed by the city of Highland Park, Ill., as an assistant corporation counsel. During this period of time, he also maintained a small private law office in Highland Park, Ill.

During the years 1958 through 1962, the petitioner was involved in a law partnership by the name of Grosshandler, Pauker & Shelly.

During the years 1957 through 1969, the petitioner served as the chairman of the Lake County, Ill., Regional Planning Commission.

During the years 1958 through 1968, the petitioner served as the city prosecutor for the city of Highland Park, Ill.

During the years 1959 through 1964, the petitioner served as a special State's attorney for the Lake County, Ill., Forest Preserve District.

During the years 1964 through 1969, the petitioner served as an attorney on behalf of the city of Lake Forest, Ill.

As a part of his law practice, the petitioner would, on occasion, prepare individual Federal income tax returns for some of his clients. Occasionally, he had communications with the Internal Revenue Service on behalf of his clients. On one occasion, he prepared an application for a corporate client to be taxed under subchapter S.

Joint Federal income tax returns for the taxable years 1959 and 1962 were filed in the names of the petitioner and his wife, Ann Grosshandler. The joint 1959 income tax return was audited sometime during 1962 as a result of which certain adjustments were made to reported taxable income.

Petitioner filed employer withholding tax returns (Forms 941) during the taxable years 1963, 1964, and 1965.

Petitioner filed a request for extension of time within which to file his Federal income tax return for each of the taxable years 1966 through 1969. None of the requests for extension of time show petitioner's home address or any social security number, but only his office address.

Petitioner prepared and submitted loan applications during the years at issue, which indicated that his law office was being operated at a profit.

When his Federal income tax returns for the years in issue were due, petitioner was aware of the fact that there would be a tax liability owed for each of these years.

Petitioner did not file any estimated income tax returns during each of the taxable years 1963 through 1969.

During the taxable years 1963, 1964, and 1969, the following Federal income taxes were withheld from salaries paid to the petitioner:

| Year | Employer | Federal income taxes withheld |
|------|----------|-------------------------------|
| 1963 ......... | Lake County, Ill. | $1,319.40 |
| 1964 ......... | Lake County, Ill. | 657.20 |
| 1969 ......... | Kaufman & Broad Homes, Inc. | 723.00 |

Petitioner received Forms W-2 from the employers showing that taxes had been withheld.

Except for the taxes withheld from petitioner's salary from the above-named employers, the petitioner has made no pay-

ments on his Federal income tax liabilities for the taxable years 1963 through 1969.

During the taxable years 1963 through 1969, the petitioner was aware of the fact that he could file Federal income tax returns without full or partial payment of the tax liabilities reported thereon.

Petitioner failed to file individual income tax returns for each of the taxable years 1966, 1967, 1968, and 1969.

Respondent's records of assessments and payments show no receipt of a Federal income tax return from petitioner for any of the taxable years 1963 through 1969. There is also no record of tax payments or refunds for those years.

In March 1967, Revenue Agent Otto Stein was assigned to petitioner's Federal income tax examination for the taxable years 1960 through 1965. Prior to his assignment, several other revenue agents had attempted to contact petitioner concerning his income tax liabilities for the taxable years subsequent to 1959.

From March 1967 until Mr. Stein first met with petitioner on May 31, 1967, Mr. Stein found it difficult to contact petitioner, a busy attorney, in order to arrange a meeting to discuss his income tax liabilities.

On May 31, 1967, petitioner told Mr. Stein that some of his books and records of income and expense for the taxable years 1960 through 1965 had been destroyed.

On May 31, 1967, Mr. Stein confronted petitioner with the fact that the Internal Revenue Service had no record of his filing Federal income tax returns for the taxable years 1963, 1964, and 1965. Petitioner told Mr. Stein that he had filed Federal income tax returns for each of the taxable years 1963, 1964, and 1965, and provided Mr. Stein with notorized statements to this effect.

On May 31, 1967, petitioner told Revenue Agent Stein that, because of the absence of adequate records, it would be necessary to reconstruct his taxable income for the taxable years being audited. He also told Mr. Stein that he would cooperate with him in reconstructing his taxable income for such years but that he would not cooperate with a special agent in doing so.

On May 31, 1967, petitioner told Mr. Stein that he had received an income tax refund for one of the years then under examination.

On May 31, 1967, petitioner told Revenue Agent Stein that he

doubted that Mr. Stein would find any record of his 1963, 1964, and 1965 income tax returns in Internal Revenue Service files.

After his initial meeting with petitioner on May 31, 1967, Mr. Stein again encountered difficulties in attempting to arrange a second meeting with petitioner. The second meeting between Mr. Stein and petitioner occurred on August 7, 1967. On that date, the petitioner again told Mr. Stein that he had filed Federal income tax returns for the taxable years 1963, 1964, and 1965. He also told Mr. Stein that he had given one of his returns for the years then under investigation (1960 through 1965) to a conductor on the Chicago & Northwestern Railroad so that it would be postmarked in Chicago by the due date, and that the remaining returns were mailed from Highland Park, Ill.

On August 7, 1967, petitioner told Revenue Agent Stein that he had requested two, and possibly three, extensions for filing returns during the years then under examination, and he had requested extensions for 1966 and 1967.

On August 7, 1967, petitioner initially told Mr. Stein that he had made at least one payment toward his income tax liability for one of the years then under examination by a check drawn on the Cosmopolitan National Bank.

After being told by Mr. Stein that copies of canceled checks could be obtained from bank microfilm, petitioner told him that he had made payment toward tax liabilities by offsetting refunds shown on returns with liabilities for other years. For example, a refund for a later year was to be applied to his 1960 tax liability.

In response to a question posed by Revenue Agent Stein on August 7, 1967, petitioner stated that he was unable to say on what dates he filed his Federal income tax returns for each of the years then under investigation.

On September 13, 1967, petitioner was interviewed by Special Agent Robert Trilling and Revenue Agent Stein, and he stated that he had filed his Federal income tax returns for the taxable years then under investigation.

On October 18, 1967, petitioner was again interviewed by Special Agent Trilling and Revenue Agent Stein, and he again told them that he had filed his income tax returns for the taxable years 1960, 1961, 1963, 1964, and 1965.

After the October 18, 1967, meeting, respondent's agents had no personal contact with petitioner for approximately 2 or 3

years. Sometime during 1969, Special Agent James Houlihan was assigned to investigate petitioner's 1965, 1966, and 1967 Federal income tax liabilities. Special Agent Houlihan's first personal contact with petitioner occurred on October 30, 1970, when he met petitioner at the Intelligence Division (presently called Criminal Investigation Division) Office located in Chicago, Ill. When asked by Special Agent Houlihan on October 30, 1970, if he had filed Federal income tax returns for the taxable years 1965 through 1967, or for any prior or subsequent years, petitioner stated that he would not answer that question without first referring to the memorandums summarizing his previous statements.

Petitioner stated in a sworn statement, submitted in connection with another judicial proceeding, that he informed Special Agent Houlihan of his problem in obtaining records of his income and expense from his former landlord during the October 30, 1970, meeting.

At no time prior to November 1970 did petitioner afford respondent's agents access to any of his records of income and expenses.

At no time during any of the investigations by respondent's agents did petitioner provide them with any retained copies of his Federal income tax returns.

At no time during the October 30, 1970, meeting did petitioner inform Special Agent Houlihan that he was having difficulty in gaining access to his records or that these records were being held by petitioner's former landlord.

Shortly after the October 30, 1970, interview, Special Agent Houlihan learned that records of petitioner's law practice had been seized by his former landlord for nonpayment of rent and were being stored in the basement of petitioner's former office building. Special Agent Houlihan then issued a summons to petitioner's former landlord and obtained 46 boxes of records concerning petitioner's law practice for the years then under investigation by Mr. Houlihan (1965 through 1967), as well as prior and subsequent years.

There had been some misunderstanding in petitioner's mind as to the years "under investigation" by Special Agent Houlihan. He believed that Special Agent Houlihan was investigating and questioning him concerning 1963, 1964, and 1965, in which he claims he filed returns, rather than 1965 plus two subsequent

years (1966 and 1967), when he admittedly did not file any returns.

Special Agent Houlihan met with petitioner on June 24, 1971, in the Waukegan, Ill., Office of the Internal Revenue Service. On that date, the petitioner told Mr. Houlihan that he had filed Federal income tax returns for each of the years 1963 through 1968. He also told Mr. Houlihan that he had made payment with one of his returns during the years 1963 through 1968, but that the other returns were filed without payment of the taxes shown to be due and owing.

On June 24, 1971, petitioner told Special Agent Houlihan that he had requested extensions of time for filing his Federal income tax returns for 1965 and subsequent years.

On June 28, 1971, petitioner met with Special Agent Houlihan and Mr. Houlihan's supervisor, Group Manager Robert Fuesel, to discuss the conclusion reached by Mr. Houlihan as a result of his investigation. Petitioner was advised that he was to be prosecuted for failure to file his 1965, 1966, and 1967 Federal income tax returns, and he was advised of his gross income figures for each of those years.

On June 28, 1971, petitioner told Messrs. Houlihan and Fuesel that he had filed Federal income tax returns for each of the taxable years 1963 through 1968 by the end of the respective subsequent calendar years, and that he had requested extensions of time for filing his Federal income tax returns for such years.

On June 28, 1971, petitioner told Messrs. Houlihan and Fuesel that he had made payment with either his 1964 or 1965 Federal income tax return, but that the other returns had been filed without payment.

In 1972, a judgment of conviction was entered against the petitioner for willfully failing to file Federal income tax returns for 1966 and 1967, in violation of section 7203 of the Code.

At the conclusion of the criminal tax case against petitioner, the civil tax case involving petitioner's Federal income tax liabilities for the years 1963 through 1969 was returned to Revenue Agent Stein for resolution of the civil liabilities. After the case had been returned to Mr. Stein, petitioner was permitted to borrow certain deposits made to petitioner's bank accounts during the period under examination.

On March 9, 1973, Mr. Stein wrote petitioner a letter requesting that he return the files and workpapers which he had

borrowed. Mr. Stein was unable to secure the return of his files and workpapers at that time.

Revenue Agent Stein then issued a summons to petitioner for the return of his files and workpapers. Petitioner returned the documents to Mr. Stein on September 27, 1973, in response to the summons.

For the taxable years 1963 through 1969, petitioner did not maintain a fee ledger, general journal, or any other book of original entry. His business records consisted of a rolodex showing client's names, deposit slips bearing some notations concerning the source of the deposit items, canceled checks, check duplicates or vouchers bearing some notations concerning the purpose of the check or client on whose behalf it was issued, and notations on some legal files. The records also included some accounting sheets, a bookkeeping book, and a petty cash book. Income sources were disclosed by the petitioner to Mr. Stein.

A review of the records obtained from petitioner's landlord pursuant to the summons in November 1970, led to the discovery of the front page of what purported to be a 1965 joint Federal income tax return for petitioner and his wife. The document was identical to a copy of a purported 1965 return which petitioner was required to submit to Capital Investments, Inc., on or about May 25, 1966, a copy of which had already been obtained from the lender's assignee, Mercantile All-In-One Loans, Inc., by respondent's agents.

The purported copy of petitioner's 1965 Federal income tax return shows his Schedule C net income to be exactly $24,000, his itemized deductions to be exactly $5,500, and reflects purported 1965 estimated tax payments totaling $2,000. The document contains no supporting schedules or exhibits, is dated April 15, 1966, and was allegedly filed on April 16, 1966. However, the purported 1965 return was never received by the Internal Revenue Service.

The Internal Revenue Service's review of the records obtained from petitioner's landlord in November 1970 failed to disclose any workpapers which might have been used by petitioner in preparing his 1963, 1964, or 1965 income tax returns.

Petitioner's wife, Ann Grosshandler, was a housewife and mother during the taxable years 1963 through 1969. During this period, she was not employed and she had no income of her own, except for a temporary job for 2 weeks during 1966. She never

earned more than $600 in any year, and she did not file a separate Federal income tax return for any of those years. She did not sign a joint Federal income tax return with petitioner for the taxable years 1963, 1964, or 1965.

At no time during the years 1963 through 1969 did the tax liabilities for those years, nor did his wife have any knowledge of his working on Federal income tax returns for such years or of his leaving their home to file returns.

At no time during the years 1963 through 1969 did petitioner tell his wife that he had filed Federal income tax returns for any of the years. During that period, he did not discuss anything regarding taxes and finances with Mrs. Grosshandler.

Special Agent Houlihan made several attempts to obtain information from Internal Revenue Service records which would corroborate petitioner's statements that he had filed Federal income tax returns for the years 1963 through 1965, and that he had received an income tax refund for one of these years, but Mr. Houlihan was unable to find any corroborating evidence.

Neither petitioner nor his wife was ever contacted by the Collection Division of the Internal Revenue Service concerning any unpaid tax liabilities for the taxable years 1963 through 1969.

The Social Security Administration has no record of the petitioner's reporting or paying self-employment taxes for the years 1963 through 1969, and none were paid by the petitioner.

Petitioner made false and misleading statements to agents of the Internal Revenue Service that he had filed Federal income tax returns for the years 1963 through 1969.

Petitioner did not cooperate fully with respondent's agents in their attempts to determine his taxable income for the years 1963 through 1969.

Petitioner failed to maintain adequate books and records of his income producing activities for the years 1963 through 1969.

During the week of December 2, 1979, the petitioner met at least 3 times with Mr. Edwin L. Baron, an experienced professional hypnotist retained by the police department for the city of Chicago. He met once with Mr. Baron on each of the 2 days immediately preceding the trial of the case and once on December 6, 1979, during the course of the trial. He was placed under hypnosis each time.

Petitioner's first two meetings with Mr. Baron were not

recorded, and no notes were kept as to what transpired. Mr. Baron's questions to petitioner, and petitioner's responses thereto, during the third meeting were recorded on a tape cassette.

During the first two meetings with Mr. Baron, the petitioner stated that he had definitely filed a Federal income tax return for the taxable year 1969 and believed he filed returns for either 1965 or 1966 as well; that he could not remember not filing a Federal income tax return for any of the taxable years 1963 through 1969; and that he did not include payment with any of his Federal income tax returns for the years 1963 through 1969 because he owed nothing on the returns.

During the third meeting with Mr. Baron, petitioner stated that he typed his 1963 Federal income tax return in Ill.; that he prepared his 1964 return in the dining room of his home and gave it to a railroad conductor on the Chicago & Northwestern Railroad for mailing in Chicago, Ill.; and that the 1965 return was prepared in the kitchen of his home and mailed from his law office in Waukegan, Ill. Petitioner also stated to Mr. Baron that he had signed each of the purported returns in his own name and on behalf of his wife; that he retained copies of each of the purported returns; and that the 1963 and 1964 returns were filed on the due date while the 1965 return was filed a day late.

## ULTIMATE FINDINGS OF FACT

(1) There are income taxes due and owing by the petitioner for each of the years 1963 through 1969.

(2) Petitioner failed to file his Federal income tax returns for the taxable years 1963 through 1969.

(3) The underpayments of income taxes which were required to be included in the petitioner's Federal income tax returns for the taxable years 1963 through 1969 were due to fraud with intent to evade tax.

(4) The assessment and collection of petitioner's Federal income taxes for the years 1963 through 1969 are not barred by the statute of limitations.

(5) Petitioner failed to make estimated tax payments for each of the taxable years 1964 through 1969.

OPINION

*Issue 1. Admissibility and Weight To Be Given Petitioner's
Direct Testimony as a Result of Memory Purportedly
Refreshed by Hypnosis*

We will first address an evidentiary question as to the admissibility of a portion of the petitioner's direct testimony regarding facts purportedly recollected as a result of having his memory refreshed by the use of hypnosis. If admissible, we should decide what weight to give to the testimony.

Respondent concedes that in appropriate circumstances and with adequate safeguards, there is no absolute prohibition against the use of hypnosis to refresh the recollection of a witness. Cf. Fed. R. Evid. 401, 612. The propriety of such procedure has been implicitly assumed in several decisions. See, e.g., *United States v. Miller*, 296 F. Supp. 422 (D. Conn. 1968), revd. on other grounds 411 F.2d 825 (2d Cir. 1969); *United States v. Adams*, 581 F.2d 193, 198–199 (9th Cir. 1978); *People v. Smrekar*, 68 Ill. App. 3d 379, 385 N.E.2D 848, 855 (1979). However, by conceding that hypnosis may be used for this limited purpose, respondent has not conceded that (1) hypnosis may be used in the courtroom, (2) statements made by a petitioner outside of the courtroom may be introduced as substantive evidence absent full compliance with the appropriate rules of evidence; or (3) statements made as a result of hypnosis are entitled to any greater credence than other testimony or evidence. Cf. *United States v. A vkard*, 597 F.2d 667 (9th Cir. 1979); *Wyller v. Fairchild Hiller Corp.*, 503 F.2d 506, 510 nn. 6 & 7 (9th Cir. 1974).

Respondent's argument with respect to the testimony in question is two-fold. First, the procedures employed by petitioner in "refreshing his recollection" through hypnosis fall far short of the safeguard required by other courts for the admission of such testimony. Second, even if the testimony is admissible, no weight should be given to it.

In *United States v. Adams, supra* at 199 n. 12, the Ninth Circuit laid down standards for the admission of testimony refreshed under hypnosis. It said:

> We think that, at a minimum, complete stenographic records of interviews of hypnotized persons who later testify should be maintained. Only if the judge, jury, and the opponent know who was present, questions that were

asked, and the witness's responses can the matter be dealt with effectively. An audio or video recording of the interview would be helpful.

Absent such a procedure, the Court of Appeals thought that the use of hypnosis to refresh recollection carried with it the danger that the witness's testimony in Court would be tainted by hypnotic suggestion. Similar concerns have been expressed in other cases where hypnosis was relied upon to "refresh the recollection" of witnesses. See *United States v. Narciso*, 446 F. Supp. 252, 277–282 (E.D. Mich. 1977).

Here, the petitioner was hypnotized twice during the week immediately preceding the trial and once during a lunch recess during the course of the trial. At the first two sessions, no records were kept of the questions asked, and there was no impartial or adverse party present to determine the propriety of the methods employed. Consequently, we do not know whether the prior sessions contained the fatal degree of suggestiveness prohibited by the Court decisions in which hypnotically "refreshed" testimony has been admitted. For example, during cross-examination, the hypnotist, Edwin L. Baron, testified that the petitioner had told him during the first two sessions that he had filed a Federal income tax return for at least the year 1969 and that he "owed nothing" on the returns that he did file. At no time did petitioner admit that he had failed to file a timely return for any of the years at issue in this case. Such testimony stands in sharp contrast to the petitioner's own testimony and his concession at trial that he failed to file Federal income tax returns for each of the years 1966 through 1969 and that taxes are owed for each of those years. Thus, it is doubtful whether the petitioner's "memory" was actually being refreshed through hypnosis. Indeed, it is not implausible, as respondent has suggested, that the petitioner may have faked hypnosis in an attempt to bolster his credibility regarding the filing of returns for all 7 years or that he had "lived a lie for so long that he no longer knew what the truth was."

The final session of hypnosis was recorded, and a cassette tape[2] of the questions asked and the petitioner's responses was received into evidence for the limited purpose of determining

---

[2]The trial judge has listened to the tape 3 times in an effort to consider the questions asked and the procedures used.

whether Mr. Baron's procedures were suggestive. During this final session, the petitioner stated that he had filed Federal income tax returns for each of the taxable years 1963, 1964, and 1965, and provided details concerning his purported preparation and filing of the returns. Our review and consideration of the questions asked by Mr. Baron during this final session "directing petitioner's attention" to the appropriate time period reveals a defect in the use of hypnosis in these particular circumstances. With respect to each year, Mr. Baron attempted to focus petitioner's attention by telling him that the time frame was when he was "working on his income tax return" in the spring of the next year. In essence, the procedure assumed the ultimate fact and then relied upon a willing subject to provide corroborating details supporting what had been suggested. Moreover, Mr. Baron's questioning at the final session appears to have been tainted by whatever had transpired during the two unrecorded prior sessions.

In short, we think the probative value of the petitioner's testimony, as purportedly refreshed through hypnosis, is so dubious as to render it inadmissible. The dangers in using hypnosis are not unlike those attendant to such procedures as the polygraph test or the use of truth serums, the results of which are almost universally deemed inadmissible as evidence. See 22 C. Wright & K. Graham, Federal Practice and Procedure: Evidence, sec. 5169 (1978).

But, even if we were to assume that such testimony is admissible, we would give no weight to it because we regard it as inadequate and incredible for several reasons. First, there are inconsistencies between the stipulated facts coupled with the petitioner's testimony at the trial and his prior statements while under hypnosis. These have already been mentioned. Second, petitioner was unable to provide any evidence to corroborate his account concerning his alleged preparation and filing of returns. Surely his wife would have remembered that he worked "in the kitchen," "in the dining room," or "at home" on the tax returns. Certainly he would have recounted to his wife the unusual details of handing one of his tax returns to a railroad conductor at some time during the past few years. At least he should have been able to produce some documentary evidence to support his claim that returns were prepared and filed.

Third, we think hypnosis provided the petitioner with a

convenient means to explain his false, conflicting, and misleading prior statements on the question of whether returns were filed. Yet, the use of hypnosis was highly selective. No effort was made to determine his reported taxable income or tax liabilities. No effort was made to locate the missing "retained" copies of his alleged returns.

Finally, petitioner's other testimony at the trial and his previous statements to respondent's agents weigh upon the credibility of his testimony purportedly "refreshed" through hypnosis. His claim that he misunderstood the years under investigation is totally unfounded in light of the testimony of Mr. Houlihan and Mr. Fuesel. His testimony and prior sworn statement that he made books and records available to respondent's agents prior to their discovery through third party contacts is untenable when considered in the light of the testimony of Mr. Stein and Mr. Houlihan.

## Issue 2. Failure To File Federal Income Tax Returns

The evidence in this record is persuasive that the petitioner failed to file Federal income tax returns for each of the years 1963, 1964, and 1965.[3] The most compelling evidence of petitioner's nonfiling of returns consists of respondent's records of assessments and payments for the years in question. Various documents of this type, some of which were obtained by respondent's agents during the course of their civil or criminal investigation of petitioner's Federal income tax liabilities, and the last of which was obtained by respondent's counsel while preparing this case for trial, were admitted into evidence. They uniformly show that as early as November 27, 1967, and as late as November 30, 1979, the respondent had no record of petitioner's having filed returns for 1963, 1964, and 1965. The records also show nonfiling for 1966 through 1969. We think these records are reliable and are entitled to great weight because of their cumulative effect for so many years. If only 1 year of nonfiling were involved, some possibility might exist that respondent's records would be inaccurate. But here it is inconceivable that such records could be inaccurate for 3 consecutive

---

[3]Petitioner has conceded that he did not file Federal income tax returns for the years 1966 through 1969.

years. Moreover, the accuracy of such records is corroborated by records of the Social Security Administration which show no record of petitioner's reporting or making payments on his self-employment taxes for the years covered by respondent's records.

Another factor which adds to the credibility of respondent's records is that they corroborate other evidence (including the testimony by petitioner) showing that (1) petitioner filed returns for earlier years; (2) his return for 1959 was audited with certain adjustments proposed and a deficiency paid; (3) petitioner failed to file any estimated tax returns or make any estimated tax payments for any of the years in issue; (4) he made no other payments toward his tax liabilities for the years 1963 through 1969; (5) he failed to file a return for each of the years 1966 through 1969; and (6) he was never contacted by the Collection Division of the Internal Revenue Service concerning the unpaid tax liabilities allegedly reported on the returns purportedly filed for 1963, 1964, and 1965.

To counter respondent's evidence of petitioner's nonfiling for 1963, 1964, and 1965, petitioner relies primarily on his own self-serving statements. We think his testimony is not worthy of belief. No competent documentary evidence was offered by petitioner, and he obtained no support from the testimony of his wife—the one witness who was most likely to have some knowledge concerning the circumstances of filing returns. He did not even retain copies of the returns claimed to have been filed. His attempted use of hypnosis, his concessions that no returns were filed for the years 1966 through 1969 and that no payments were made during any of the years in controversy, represent an obvious attempt to extricate himself from the web of false and conflicting statements he made to respondent's agents during the course of their extensive investigations into his Federal income taxes. Cf. *Block v. Commissioner*, 482 F.2d 1342 (6th Cir. 1973), affg. per curiam T.C. Memo. 1972–130. Not only has the petitioner failed to prove that he filed Federal income tax returns for the years 1963, 1964, and 1965, but the respondent has affirmatively established that the petitioner did not file any returns for those years.

### Issue 3. Statute of Limitations

Since the petitioner has conceded that he did not file Federal income tax returns for the years 1966 through 1969, and we have

concluded that he failed to file returns for the years 1963, 1964, and 1965, it follows that the assessment and collection of petitioner's income taxes for all of the years at issue are not barred by the statute of limitations. Sec. 6501(c)(3).

## Issue 4. Section 6653(b) Additions to Tax

Since no returns were filed and the petitioner has stipulated that a tax liability is owed for each of the years 1963 through 1969, a substantial underpayment of tax with respect to each of the years has been established. Thus, the next issue is whether respondent correctly determined that the petitioner is liable for the addition to tax for fraud for each of the years in question.

The issue of fraud is one of fact to be determined upon a consideration of the entire record. *Stratton v. Commissioner*, 54 T.C. 255 (1970). The Commissioner bears the burden of proving fraud. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. Fraud is never presumed, but must be affirmatively established by clear and convincing evidence. *Beaver v. Commissioner*, 55 T.C. 85 (1970). Direct evidence of fraudulent intent is seldom available, and whether it exists must be determined from the conduct of the taxpayer and the surrounding circumstances.

We hold on this record that respondent has proved fraud by clear and convincing evidence.

Failure to file returns does not in itself establish fraud. However, such failure may properly be considered in connection with other facts in determining whether any deficiency or underpayment of tax is due to fraud. *Beaver v. Commissioner, supra*; *Cirillo v. Commissioner*, 314 F.2d 478 (3d Cir. 1963); *Bennett v. Commissioner*, 30 T.C. 114 (1958). An extended pattern of nonfiling plus some "convincing affirmative indication" of the requisite specific intent to defraud warrants imposition of the addition to tax for fraud. *Stoltzfus v. United States*, 398 F.2d 1002, 1004 (3d Cir. 1968).

There are other indicia of fraud present in this case. First, the petitioner was aware of his obligation to file returns and that taxes were due for each of the years 1963 through 1969. He was an attorney and a well-educated person. He had filed Federal income tax returns for previous years. He earned substantial income which required him to file returns. He had prepared income tax returns for some of his clients and had communicat-

ed with the Internal Revenue Service on behalf of his clients. Second, the petitioner attempted to avoid payment of his tax liabilities for 1963 through 1969 by making false and inconsistent statements to respondent's agents during the course of their examinations. See *Powell v. Granquist*, 252 F.2d 56, 60 (9th Cir. 1958); *Beaver v. Commissioner, supra* at 93. Third, the petitioner did not cooperate with respondent's agents during their investigations. *Lord v. Commissioner*, 525 F.2d 741 (9th Cir. 1975); *Powell v. Granquist, supra*.

A fourth indicia of fraud here is that the petitioner failed to keep complete and accurate records of his income. As a long-time practitioner, he was well aware of the obligation to maintain adequate records. *Lollis v. Commissioner*, 595 F.2d 1189 (9th Cir. 1979); *Estate of Mazzoni v. Commissioner*, 451 F.2d 197 (3d Cir. 1971); *Otsuki v. Commissioner*, 53 T.C. 96 (1969).

Finally, it is clear that the petitioner stopped filing income tax returns after 1962. He filed no returns until respondent's agents caught up with him. At some point, it must be concluded that he did not intend to file until his nonfiling was discovered. Such conduct constitutes willful concealment of income to evade payment of taxes. One obvious reason for continued failure to file returns is the attempt to conceal defalcations for prior years. *Acker v. Commissioner*, 26 T.C. 107 (1956).

Accordingly, after examining and evaluating all the facts contained in this record, we have found, and hold, that part of the underpayments of tax for each of the years at issue was due to the petitioner's fraud. We therefore sustain the additions to tax under section 6653(b).

### Issue 5. Additions to Tax Under Section 6654

In his notice of deficiency, respondent determined that the petitioner is liable for the additions to tax under section 6654 for the years 1964 through 1969 for failure to make timely estimated tax payments.

Petitioner testified that he never filed any estimated tax returns and that he did not make any payment toward his admitted tax liabilities during the years 1964 through 1969. Petitioner has also conceded that he did not file Federal income tax returns for the years 1966 through 1969, and we have found that he failed to file such returns for the prior 3 years.

The section 6654 addition to tax is mandatory unless the

petitioner can place himself within one of the computational exceptions provided for in subsection (d) thereof. As this Court said in *Estate of Ruben v. Commissioner*, 33 T.C. 1071, 1072 (1960): "This section has no provision relating to reasonable cause and lack of willful neglect. It is mandatory and extenuating circumstances are irrelevant."

Petitioner has failed to show that he falls within one of the exceptions provided for in section 6654(d), and because of his failure to file returns for the years in issue, the assessment and collection of the additions to tax is not barred by the statute of limitations. Accordingly, we sustain the respondent's determination, reduced to reflect agreed adjustments to the petitioner's corrected taxable income for the years 1964 through 1969.

To reflect the agreements of the parties and our conclusions with respect to the disputed issues,

*Decision will be entered under Rule 155.*