T.C. Memo. 1996-453


UNITED STATES TAX COURT


IRVIN HEARD, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13685-94.                    Filed October 7, 1996.


<u>Howard S. Press</u>, for petitioner.

<u>Leon St. Laurent</u> and <u>Francis J. Strapp, Jr.</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  By separate notices of deficiency, respondent determined deficiencies and additions to tax in petitioner's Federal income taxes as follows:

|      |            | Additions to Tax | |
| Year | Deficiency | Sec. 6651(a) | Sec. 6654 |
| 1989 | $7,011 | $1,711 | $463 |
| 1990 | 6,653 | 1,663 | 441 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  The issues for our consideration are whether amounts received by petitioner qualify as a fellowship grant excludable from income under section 117 and whether petitioner is liable for the additions to tax stated above.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioner resided in Palisades Park, New Jersey, at the time the petition was filed in this case.

Petitioner attended Southern University in New Orleans, Louisiana, from June 1968 to May 1973, earning a B.S. in physics and a minor in math.  From August 1974 to May 1980 petitioner attended Howard University in Washington, D.C., earning a master's degree in physics.  After receiving his master's degree, petitioner remained at Howard for an additional 2 years pursuing a Ph.D. degree in physics, but he did not complete the required Ph.D. thesis research during that time.  Petitioner left Howard

in May 1982, lectured at the University of Maryland from August 1982 to June 1983, and thereafter accepted a position as an assistant professor at Lincoln University in Pennsylvania beginning in August 1983.

In June 1985, petitioner applied to the National Institute of General Medical Sciences (NIGMS), a division of the National Institutes of Health (NIH), for a Minority Access to Research Careers (MARC) faculty fellowship. The MARC program is a division of the National Research Service Award (NRSA) program, a program designed for the provision of grants for biomedical and behavioral research or research training. The MARC program was designed to provide research and training opportunities to faculty and students at 4-year colleges that have a substantial enrollment of students from underrepresented minority groups. The MARC faculty fellowship is designed to strengthen the research and research training opportunities of minority institutions by providing an opportunity for eligible faculty who lack the Ph.D. degree (or equivalent) to obtain the research doctorate. The expectation of the faculty fellowship program is that the candidate's training in a setting away from the candidate's home institution would expose the candidate to new ideas and would enhance the research and teaching environment of the home institution when the candidate returned.

At the time he applied for the MARC faculty fellowship, petitioner's home institution was Lincoln University. The

Lincoln University officials who wrote in support of petitioner's MARC application expected petitioner to return to Lincoln. In his application, petitioner indicated that if granted a MARC faculty fellowship, he would be able to complete his Ph.D. thesis research and thereafter return to Lincoln University to teach physics and establish a research program. Petitioner requested a fellowship award extending for a period of 2 years and 9 months during which time petitioner would attend Drexel University to pursue his Ph.D. thesis research with Dr. Frank A. Ferrone, an assistant professor there. Under the direction of Dr. Ferrone, petitioner was to pursue biophysics research, specifically studying depolymerization of sickle cell hemoglobin. Petitioner indicated on his MARC application that he expected to receive his Ph.D. at the conclusion of the faculty fellowship in May 1989.

On January 15, 1986, petitioner was notified by NIGMS that he had been awarded a MARC faculty fellowship. The notification of award received by petitioner indicated that he would receive a $25,000 stipend and a $3,000 institutional allowance[1] for the initial 12-month period. The award notice listed additional funds for the second and third year of petitioner's requested grant in a box containing the preprinted statement "Future Support Recommended (Subject to Availability of Funds and

---

[1] The institutional allowance is a payment to the sponsoring institution to help defray the cost of research supplies, equipment, travel to scientific meetings, and other related items.

Satisfactory Progress)".  The column labeled "Budget Period 02"
listed a stipend of $25,000 and total support of $28,000.[2]  The
funds listed for "Budget Period 03" were prorated for a 9-month
period as requested by petitioner in his MARC application and
included a stipend of $18,750 and total support of $21,000.[3]

In September 1986, petitioner enrolled at Drexel University
and submitted a research fellowship activation notice to NIGMS
whereby petitioner's MARC award was to be activated for the 12-
month period extending from September 15, 1986, to September 14,
1987.  In addition to his research activity, petitioner was
expected to take a Ph.D. qualifying examination during his first
year at Drexel.  Petitioner took the examination in the spring of
1987 but did not pass.  Thereafter, petitioner was expected to
take a set of practice qualifiers in the ensuing year and
demonstrate marked progress in his grades to maintain his
admission status at Drexel.

In July 1987, petitioner wrote to two NIH officials
requesting a 1-year deferral of the remaining portions of his
MARC fellowship grant.  In his request, petitioner indicated that
he intended to return to Lincoln University to complete the final
year of an Office of Naval Research (ONR) grant project that

---

[2]  An institutional allowance of $3,000 was presumably
included in the total support amount.

[3] A prorated institutional allowance of $2,250 was
presumably included in the total support amount.

petitioner had worked on prior to his departure to attend Drexel. Petitioner had expected another individual to finish the ONR project in his absence, but that individual was unable to do so and had resigned from the project. Upon completion of the ONR project, petitioner expected to return to his doctoral research; however, he was aware that his decision to return to Lincoln University could jeopardize his chance to continue his studies at Drexel. In a July 27, 1987, letter to Elward Bynum, an NIH Program Administrator, petitioner wrote:

> I have enclosed a copy of a letter requesting postponement of the second and third year of my fellowship. As indicated, the set of circumstances involving the ONR contract was totally unanticipated. This request has been discussed with my sponsor, Dr. Ferrone, and in his opinion, this could have an adverse effect on my progress if I fail to continue my preparation for the Ph.D. qualifying exam this year off. * * * Thus, there are some uncertainties with regards to my re-admission into Drexel even if NIH approves my request. Although Drexel is my first choice for completion of my studies, if re-admission is denied, I am willing to pursue my work at another institution.

On August 10, 1987, an NIH official wrote to petitioner to notify him that his request for a 1-year leave of absence from his MARC faculty fellowship had been approved. The approval letter indicated that petitioner's funding would resume at the conclusion of his year off and thereafter continue through June 1990, which "will provide the approved two years and nine months of fellowship support." The letter also stated: "In the event you do not return to Drexel to complete your approved research

training, we would be willing to consider a request to transfer your fellowship to another institution."

In the ensuing academic year, petitioner returned to Lincoln University and assumed full-time faculty status while working on the ONR project. Unfortunately, petitioner was unable to continue his preparation for and did not retake the Ph.D. qualifying exam. On April 28, 1988, petitioner was notified that the Department of Physics and Atmospheric Science at Drexel University did not support petitioner's readmission to the institution. Petitioner furnished a copy of this notification to NIH on June 22, 1988.

On July 14, 1988, petitioner submitted an NRSA application requesting a transfer of the remaining 1 year and 10 months[4] of support under his MARC fellowship grant to the City College of the City University of New York (CUNY). According to the application, petitioner intended to continue his Ph.D. thesis research under the sponsorship of Dr. Joseph A. Johnson III, a professor of physics at CUNY. Under the direction of Dr. Johnson, petitioner was to study blood circulatory flow at low

---

[4] In his original application for a MARC faculty fellowship, petitioner requested an award period of 2 years and 9 months. Petitioner's request to postpone his MARC award was granted after he had received 11 months of support in the initial award year, resulting in the deferral of 1 year and 10 months of unused support.

fluid velocities.[5]  Petitioner also expected to prepare for and pass the Ph.D. qualifying exam by January 1989.

On August 26, 1988, NIH granted petitioner's request to transfer his fellowship to CUNY and indicated that he would receive a stipend of $25,000 and an institutional allowance of $3,000 for the 12-month period extending from August 20, 1988, to August 19, 1989.  The award notification contained the preprinted statement "Future Support Recommended (Subject to Availability of Funds and Satisfactory Progress)" and thereafter contained a prorated stipend and institutional allowance for a 10-month period commencing at the end of the current award period.

In the summer after his first academic year at CUNY, petitioner submitted an Award Continuation Application to NIH wherein petitioner requested activation of the remaining 10 months of his NRSA grant.  Petitioner's request was granted on July 24, 1989.  Petitioner received a prorated stipend of $20,833 and an institutional allowance of $2,500 for the period August 20, 1989, to June 19, 1990.

On April 27, 1990, petitioner wrote to an NIH program administrator requesting a 1-year extension of his MARC faculty fellowship.  Petitioner indicated in his letter that he needed

---

[5]  An NIGMS grants management official indicated at trial that petitioner's request to transfer his MARC fellowship to CUNY was reviewed in detail by NIH staff to assure that the proposed Ph.D. research activities with Dr. Johnson as sponsor were of similar or comparable quality to the originally approved research project at Drexel.

the additional time to complete his dissertation research and the requirements for the Ph.D. degree.  The extension request was granted by NIGMS in June 1990.  Petitioner received a stipend of $25,000 and an institutional allowance of $3,000 for the period June 20, 1990, to June 19, 1991.  Petitioner remained at CUNY for the extended period of his MARC fellowship; however, he did not complete his Ph.D. degree.

## OPINION

Section 117(a) excludes from gross income any amount received as a scholarship or fellowship grant.  Generally, a "scholarship" or "fellowship grant" includes an amount paid to or for the benefit of an individual to aid him or her in the pursuit of study or research.  Sec. 1.117-3, Income Tax Regs.  The fact that the recipient is required to furnish reports of his or her progress to the grantor does not destroy the essential character of such an amount as a scholarship or fellowship grant.  Sec. 1.117-4(c)(2), Income Tax Regs.  In Bingler v. Johnson, 394 U.S. 741, 751 (1969), the Supreme Court sustained the validity of these regulations as comporting with the ordinary understanding of scholarships and fellowships as "relatively disinterested, 'no strings' educational grants, with no requirement of any substantial quid pro quo from the recipients."

Prior to amendment by the Tax Reform Act of 1986 (TRA 1986), Pub. L. 99-514, sec. 123, 100 Stat. 2085, 2112, section 117 permitted the entire amount of a fellowship grant to be excluded

from gross income provided that the grant did not represent payment for teaching, research, or other services in the nature of part-time employment and as long as the recipient was a candidate for a degree.  For individuals who were not candidates for a degree, the exclusion was limited to $300 per month for a maximum of 36 months.  Sec. 117(b)(2)(B).

TRA 1986 sec. 123, 100 Stat. 2112, modified the income tax treatment of scholarships and fellowship grants by making amendments to section 117.  Section 117(a), as amended, excludes from gross income "any amount received as a qualified scholarship by an individual who is a candidate for a degree at an educational organization described in section 170(b)(1)(A)(ii)."  The term "qualified scholarship" refers to "any amount received by an individual as a scholarship or fellowship grant to the extent the individual establishes that, in accordance with the conditions of the grant, such amount was used for qualified tuition and related expenses."  Sec. 117(b)(1), as amended.  The term "qualified tuition and related expenses" means (a) tuition and fees required for enrollment or attendance of a student at an educational organization described in section 170(b)(1)(A)(ii), and (b) fees, books, supplies, and equipment required for courses of instruction at such an educational organization.  Sec. 117(b)(2), as amended.  The amendments to section 117 eliminated the exclusion for individuals who are not degree candidates.

The amendments to section 117 are effective for taxable years beginning on or after January 1, 1987, except that the prior law continues to apply to scholarships and fellowships granted before August 17, 1986.  H. Conf. Rept. 99-841 (Vol. 2), at II-17 (1986), 1986-3 C.B. (Vol. 4) 1, 17.  Section 1.117-6(f)(3), Proposed Income Tax Regs., 53 Fed. Reg. 21688 (June 9, 1988), states a transitional rule for determining whether a scholarship or fellowship is to be considered granted before August 17, 1986, as follows:

> (3) Scholarships or fellowships granted before August 17, 1986--(i) In general.  For purposes of this section, a scholarship or fellowship is considered granted before August 17, 1986, to the extent that, in a notice of award made before that date, the grantor made a firm commitment to provide the recipient with a fixed cash amount or a readily determinable amount.  A notice of award is treated as containing a firm commitment even if the scholarship or fellowship grant is subject to a condition that the recipient remain in good standing or maintain a specific grade point average.  In addition, a requirement that the recipient file a financial statement on an annual basis to show continuing financial need is not treated as a requirement to reapply to the grantor.  If a scholarship or fellowship, initially awarded before August 17, 1986, is granted for a period exceeding one academic period (for example, a semester), amounts received in subsequent academic periods are treated as granted before August 17, 1986, only if--
>
> > (A) The amount awarded for the first academic period is described in the original notice of award as a fixed cash amount or readily determinable amount;
> >
> > (B) The original notice of award contains a firm commitment by the grantor to provide the scholarship or fellowship grant for more than one academic period; and

(C) The recipient is not required to reapply to the grantor in order to receive the scholarship or fellowship grant in future academic periods.

We note at the outset that proposed regulations "generally carry no more weight than a position advanced by respondent." Estate of Wallace v. Commissioner, 95 T.C. 525, 547 (1990), affd. 965 F.2d 1038 (11th Cir. 1992). However, because both parties in this case accept the criteria stated in the proposed regulation in question, the Court will use it as a framework for resolving their dispute.

Petitioner argues that, pursuant to the proposed regulation, the fellowship amounts he received in 1989 and 1990 should be considered granted before August 17, 1986, and that he is therefore entitled to exclude those fellowship amounts from income under the earlier version of section 117. Respondent argues that the requirements of subdivisions (B) and (C) in the above excerpt of the proposed regulation have not been met, that section 117 as amended therefore applies, and, in any case, that petitioner was not a candidate for a degree during the years in issue.

We will first address the aspects of the transitional rule over which the parties are in disagreement. Respondent argues that petitioner's initial MARC fellowship grant did not contain a "firm commitment" to provide fellowship support for more than one academic period--thus, in respondent's view, the requirements of subdivision (B) of the proposed regulation have not been met.

The award notice received by petitioner indicated that he would receive a $25,000 stipend in the initial 12-month period and that future support was recommended for two additional budget periods "subject to availability of funds and satisfactory progress". Respondent contends that petitioner's fellowship support beyond the initial 12-month period was not guaranteed pursuant to the preprinted conditions for future support stated in the award notice. In our view, however, those conditions do not prevent the award from being a firm commitment within the meaning of the proposed regulation.

As noted in the regulation itself, a firm commitment to provide support exists "even if the scholarship or fellowship grant is subject to a condition that the recipient remain in good standing or maintain a specific grade point average." Thus, the requirement that petitioner maintain "satisfactory progress" is clearly addressed by the regulation and does not prevent his award from being considered a firm commitment for support beyond the initial award year.

Similarly, the preprinted condition in the award notice indicating that petitioner's future support was "subject to availability of funds" does not, in our view, preclude us from holding that the award was a firm commitment of support for a period of 2 years and 9 months. An NIGMS grants management official indicated at trial that the agency had single fiscal year spending authority and that approval had to be obtained from

Congress each year prior to making scholarship or fellowship disbursements. The NIGMS official also indicated that the agency has never discontinued a fellowship award due to a lack of funding. We find that the listing of approved or recommended stipend amounts for three budget periods in the notification of award received by petitioner is indicative of NIGMS's single fiscal year spending authority and that petitioner's fellowship support after the initial award period had little, if any, chance of being discontinued for lack of funding.

We also note that the MARC faculty fellowship program is designed to provide an opportunity for eligible faculty who lack the Ph.D. degree to obtain the research doctorate. At the time he submitted his MARC application, petitioner anticipated that it would take 2 years and 9 months to complete his Ph.D. degree, and he requested a fellowship award period commensurate with achieving that goal. We find that the MARC award petitioner received was intended to provide sufficient fellowship support to allow him to obtain his Ph.D. degree, in line with the objectives of the MARC program. Indeed, we would not expect a prospective Ph.D. candidate to enroll in a multiyear degree program if his requested and seemingly approved source of funding was not reasonably secure for the duration of the program. In sum, we find that the award notice received by petitioner contained a firm commitment to provide support for more than 1 academic year,

i.e., for 33 months, and therefore the award meets the requirements of subdivision (B) of the proposed regulation.

Respondent next argues that petitioner has failed to meet the requirements of subdivision (C) of the proposed regulation. Pursuant to that paragraph, the fellowship payments petitioner received in 1989 and 1990 are to be treated as granted prior to August 17, 1986, only if petitioner was not required to reapply to NIH to receive the fellowship grant. Respondent argues that petitioner fails to comply with the requirements of subdivision (C) because he was required to submit an application to NIH in conjunction with his request to transfer his fellowship to CUNY.

The appropriate inquiry on this issue, in our view, is whether the original notification of award received by petitioner required him to submit additional NRSA applications as a condition to receiving continued fellowship support. In that regard, we note our finding above that the award notice received by petitioner was a firm commitment to provide fellowship support for 33 months. We find no evidence that petitioner would have been required to reapply to NIH to receive the approved fellowship support had he remained at Drexel and demonstrated satisfactory progress toward his Ph.D. degree throughout the award period.

As the events transpired, however, petitioner withdrew from Drexel after obtaining a 1-year leave of absence from his MARC fellowship and thereafter sought to transfer the suspended

portions of his fellowship grant to CUNY. In these particular circumstances, we find that petitioner's submission of an application to NIH for the sole purpose of transferring his existing fellowship grant to a new institution does not run afoul of the requirements of subdivision (C) of the proposed regulation. As long as petitioner continued his Ph.D. studies (at an approved institution), a firm commitment to provide him with a total of 33 months of funding remained. Based on our review of the record in this case, we find that petitioner was not required to reapply to NIH in order to secure fellowship funding in future academic periods. We also find that the transfer of the unused portion of petitioner's fellowship award to CUNY after his 1-year leave of absence from his Ph.D. studies at Drexel demonstrates a firm commitment to provide support to petitioner for a total of 2 years and 9 months, as requested in his original MARC application.

The above analysis does not apply, however, to petitioner's request for a 1-year extension of his MARC fellowship after it became apparent that he needed additional time to complete his Ph.D. degree. Petitioner submitted the extension request on April 27, 1990, and it was granted shortly thereafter. The additional funding petitioner received pursuant thereto cannot be considered part of his original MARC award, which, as described above, was a firm commitment to provide fellowship support for 2 years and 9 months. Consequently, we hold that the fellowship

payments received by petitioner pursuant to the extended
fellowship period commencing on June 20, 1990, do not meet the
requirements of the transitional rule noted above, and section
117 as amended by TRA 1986 applies to those amounts.

Next, we must address respondent's claim that petitioner was
not a candidate for a degree during the years in issue.  While
petitioner was enrolled in physics courses at CUNY, respondent
argues that those classes were taken solely to enable him to
prepare for and pass the Ph.D. qualifying exam, and that until
petitioner did so, he was not a candidate for a degree within the
meaning of section 117.  Petitioner explained at trial, however,
that prospective Ph.D. candidates at CUNY who have not passed the
qualifying exam are required to enroll in a master's degree
program as a precursor to, and in preparation for, eventual
enrollment as a "formal" Ph.D. candidate (upon completing the
qualifying exam).  Petitioner introduced into evidence a letter
from the CUNY registrar's office corroborating his claim that he
was enrolled in a master's degree program in physics from
September 1, 1988, to June 1, 1992.  Respondent, on the other
hand, argues that petitioner had previously received a master's
degree in physics from Howard University and therefore could not
have been enrolled for that same degree at CUNY.

Section 1.117-3(e), Income Tax Regs., states that a
candidate for a degree is an individual undergraduate or graduate
studying or conducting research to meet the requirements for a

degree given by a college or university.  We note that petitioner's goal in obtaining a MARC faculty fellowship was to continue his Ph.D. thesis research and ultimately receive the research doctorate.  Based on the record in this case, we are satisfied that petitioner was required to enroll in the master's program at CUNY as a stepping stone toward reaching his ultimate goal, the Ph.D. degree.  Thus, we find that petitioner took courses in the master's program at CUNY designed to meet the requirements for receiving a degree from that institution, and that petitioner was a candidate for a degree during the years in issue within the meaning of section 117.

As we have concluded above, section 117 prior to amendment by TRA 1986 applies to the fellowship payments petitioner received in 1989 and during approximately the first half of 1990; section 117 as amended applies to the fellowship payments received thereafter (i.e., pursuant to petitioner's request for a 1-year extension of his MARC fellowship commencing on June 20, 1990).  Since petitioner was a candidate for a degree during the years in issue, he is entitled to exclude all fellowship amounts received under the earlier version of section 117, and only those fellowship amounts used for "qualified tuition and related expenses" under amended section 117.  Petitioner, however, failed to provide any evidence of the amount he spent on tuition, books, fees, and other related expenses while at CUNY, nor did he provide a copy of his transcript or other notification from the

school indicating how many courses he took during the latter half
of 1990. Therefore, we hold that petitioner has not met his
burden of establishing that any of the payments he received
during the extended fellowship period commencing on June 20,
1990, were used for qualified tuition and related expenses.

Finally, we must determine whether petitioner is liable for
additions to tax under section 6651(a) and section 6654 for the
year 1990.[6]  In the case of failure to file an income tax return
on the date prescribed for filing, section 6651(a) imposes an
addition to tax equal to 5 percent of the amount required to be
shown on the return, with an additional 5 percent to be added for
each month or partial month during which such failure continues,
not to exceed 25 percent in the aggregate. The addition to tax
under section 6651(a) does not apply if it is shown that the
failure to file was due to reasonable cause and not to willful
neglect.

The parties stipulated that petitioner did not file an
income tax return for 1989 or 1990.[7]  Petitioner indicated at

---

[6]  Pursuant to our findings herein, petitioner is entitled
to exclude from income the fellowship payments he received during
1989. As a result, petitioner did not have sufficient income to
require him to file a return for that year. Consequently, the
additions to tax under sec. 6651(a) and sec. 6654 are not
applicable to petitioner's 1989 taxable year.

[7]  At trial, petitioner indicated for the first time that if
he had filed returns for 1989 and 1990, his filing status would
have been "head of household". Petitioner attached two documents
to his posttrial brief purporting to support this claim. In the
(continued...)

trial that he believed his fellowship award was excludable from income and that he was not required to file returns for those years.  Petitioner claimed in his testimony that he based his belief on the advice of an unnamed IRS employee whom petitioner contacted shortly after he received a notice in his student mailbox at Drexel that there had been a change in the law regarding the taxability of scholarships and fellowships.  Even assuming arguendo that petitioner did contact an IRS employee while he was attending Drexel, any advice he received at that time would not exculpate him from his failure to file a tax return for 1990 after his transfer to CUNY and subsequent request for a 1-year extension of his MARC fellowship had been granted. Accordingly, we sustain respondent's determination that petitioner is liable for the addition to tax under section 6651(a) for 1990.

Respondent also determined an addition to tax against petitioner under section 6654(a) for failure to make timely

---

[7](...continued)
notices of deficiency, respondent determined that petitioner's filing status was "single".

We will not, as a general rule, consider an issue raised for the first time at trial since it has not been properly pleaded. See Estate of Mandels v. Commissioner, 64 T.C. 61, 73 (1975). Additionally, we note that the documents attached to petitioner's posttrial brief were not introduced at trial and therefore are not part of the record in this case.  Rule 143(b).  Consequently, even if petitioner's filing status were an issue before us, we would nevertheless find that petitioner has not established that he is eligible to file as "head of household" during the years in issue.

estimated tax payments.  This addition to tax is mandatory and cannot be waived due to reasonable cause.  <u>Grosshandler v. Commissioner</u>, 75 T.C. 1, 21 (1980); sec. 1.6654-1(a), Income Tax Regs.  However, no addition to tax is imposed under section 6654(a) if one of the exceptions set forth in section 6654(e) is satisfied.  Under section 6654(e)(2), no addition to tax is imposed under section 6654(a) if:  (1) The taxpayer's preceding taxable year was a taxable year of 12 months; (2) the taxpayer did not have any tax liability for the preceding taxable year; and (3) the taxpayer was a citizen or resident of the United States throughout the preceding taxable year.  Pursuant to our finding above that petitioner's MARC fellowship was excludable from income during 1989, petitioner had no tax liability and was not required to file a tax return for that year.  In addition, petitioner was a resident of the United States throughout 1989.  Consequently, petitioner has satisfied the exception under section 6654(e)(2) for his 1990 taxable year.  We hold that petitioner is not liable for the addition to tax under section 6654(a).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.