T.C. Memo. 2001-249

UNITED STATES TAX COURT

BRUCE DAVID COHEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16641-96.                Filed September 20, 2001.

Respondent determined deficiencies and additions
to tax for petitioner's 1986, 1988, 1989, 1990, 1991,
and 1992 taxable years.

<u>Held</u>:  Petitioner's sole proprietorship earned net
income as redetermined herein for each of the 6 years
involved in this case.

<u>Held</u>, <u>further</u>, petitioner recognized capital gain
from the sale of stock in the amounts of $10,490 and
$9,227 in 1989 and 1990, respectively.

<u>Held</u>, <u>further</u>, petitioner's filing status for 1992
was married filing separate.

<u>Held</u>, <u>further</u>, petitioner is entitled only to the
standard deduction in 1990.

<u>Held</u>, <u>further</u>, petitioner is liable for the sec.
6651(a)(1), I.R.C., addition to tax for failure timely
to file income tax returns for each of the years at
issue.

Held, further, petitioner is liable for the sec. 6654, I.R.C., addition to tax for failure to pay estimated tax for each of the 6 years under consideration.


Bruce David Cohen, pro se.

Miles D. Friedman, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


NIMS, Judge:  Respondent determined the following deficiencies and additions to tax with respect to petitioner's Federal income taxes:

| Taxable Year | Income Tax Deficiency | Additions To Tax | |
| --- | --- | --- | --- |
| | | Sec. 6651(a)(1) | Sec. 6654 |
| 1986 | $94,940 | $23,735 | $4,594 |
| 1988 | 58,089 | 14,522 | 3,737 |
| 1989 | 70,535 | 17,634 | 4,770 |
| 1990 | 119,550 | 29,887 | 7,827 |
| 1991 | 70,516 | 17,629 | 4,030 |
| 1992 | 78,024 | 19,506 | 3,403 |

After concessions, the issues remaining for decision are:

(1) Whether petitioner's sole proprietorship earned net income in the amounts asserted by respondent for each of the 6 years involved in this case;

(2) whether petitioner recognized capital gain from the sale of stock in 1989 and 1990 in the amounts asserted by respondent;

(3) whether petitioner's filing status was single or married filing separate in 1992;

(4) whether petitioner is entitled to only the standard deduction or, instead, to itemized deductions, in 1990;

(5) whether petitioner is liable for the section 6651(a)(1) addition to tax for failure timely to file income tax returns for each of the 6 years at issue; and

(6) whether petitioner is liable for the section 6654 addition to tax for failure to pay estimated tax for each of the 6 years involved.

Additional adjustments to petitioner's self-employment taxes and deduction for self-employment taxes are computational in nature and will be resolved by our holdings on the foregoing issues.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

To facilitate disposition of the foregoing issues, we shall first make general findings of fact and then combine our findings and opinion with respect to each issue.

I.  General Findings of Fact

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are

incorporated herein by this reference. At the time the petition was filed in this case, petitioner resided in Dana Point, California.

From 1984 through 1999, petitioner operated a sole proprietorship under the name of Dana Point Bicycle Sport (Bicycle Sport). Bicycle Sport was an independent bicycle retail store engaged primarily in the business of selling new bicycles and bicycle-related products to consumers and of repairing bicycles.

Petitioner failed to timely file Federal income tax returns or to pay any estimated taxes for the years at issue. As a result, a revenue agent with the Internal Revenue Service, Darrell Cavender, contacted petitioner in 1994 in an attempt to secure the delinquent returns. When petitioner failed to submit the requested returns, notices of deficiency based on records obtained from third parties were issued to petitioner for the subject years on April 29, 1996.

Thereafter, on October 26, 1998, petitioner filed tax returns for all 6 years. Through the information provided on such returns and additional financial materials obtained, respondent concluded that the amounts for which petitioner was determined to be liable should be reduced. At initial hearings in this case on March 20 and 27, 2000, respondent communicated to the Court the following revised amounts in dispute:

| Taxable Year | Income Tax Deficiency | Additions To Tax |
|---|---|---|
| 1986 | $11,062.00 | $3,300.73 |
| 1988 | 3,927.00 | 1,234.37 |
| 1989 | 43,131.00 | 13,699.70 |
| 1990 | 20,276.00 | 6,396.52 |
| 1991 | 19,610.00 | 6,023.24 |
| 1992 | 9,182.00 | 2,695.96 |

Respondent also informed petitioner at the hearings that further adjustments would be made if petitioner demonstrated nontaxable sources of income and/or business expenses in excess of those underlying respondent's revised computations, provided evidence of a cost basis in property generating capital gains, or substantiated certain amounts claimed as itemized deductions. Petitioner did not do so, and respondent's position regarding petitioner's tax liabilities remained substantially unchanged at the time of trial on March 21, 2001. Petitioner appeared and testified at trial but did not provide any further documentation relating to his financial affairs. Subsequent to the proceedings, respondent filed a posttrial brief; petitioner did not.

## II. Net Income From Proprietorship

The income of a sole proprietorship must be included in calculating the income and tax liabilities of the individual owning the business. Sec. 61(a)(2). The net profit or loss of

such an enterprise is generally computed on Schedule C, Profit or Loss From Business, by subtracting cost of goods sold and ordinary and necessary business expenses from the gross receipts of the venture. For the years at issue, respondent calculated petitioner's net income from Bicycle Sport through a combination of accepting in whole or in part figures reported on petitioner's late-filed returns and of employing indirect methods to supply missing or additional data.

Taxpayers are required to maintain records sufficient to establish the existence and amount of all items reported on the tax return, including both income and deductions therefrom. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs. In absence of books and records adequate to determine a taxpayer's proper tax liability, the Commissioner is authorized to reconstruct income by any reasonable method which will clearly reflect income. Sec. 446(b); Commissioner v. Hansen, 360 U.S. 446, 467 (1959); Palmer v. IRS, 116 F.3d 1309, 1312 (9th Cir. 1997); Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989).

As a general rule, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving error therein. Rule 142(a); cf. sec. 7491 (generally effective with respect to examinations commencing after July 22, 1998). However, the Court of Appeals for the Ninth Circuit, to which

appeal in the instant case would normally lie, has indicated that before the presumption of correctness will attach in an unreported income case, the determination must be supported by at least a "minimal" factual predicate or foundation of substantive evidence linking the taxpayer to income-generating activity or to the receipt of funds.  Palmer v. IRS, supra at 1312-1313; see also Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985); Petzoldt v. Commissioner, supra at 687-689.

Here, the record clearly links petitioner to an income-producing activity.  Bicycle Sport, even according to petitioner's own returns, generated substantial gross sales in each of the years at issue.  Accordingly, respondent's reconstructions of the business's profits, to the extent they reveal unreported income, are supported by the requisite factual predicate for placing the burden to show otherwise upon petitioner.

A.  1986

On the Schedule C attached to petitioner's 1986 Form 1040, U.S. Individual Income Tax Return, gross receipts from Bicycle Sport are shown as $311,159.  After deductions, petitioner reported a net loss from his business of $5,063.  Respondent accepted, and the parties stipulated, that gross sales in 1986 were $311,159.  However, because petitioner provided no records substantiating his claimed expenditures, respondent used industry

statistics to reconstruct expenses. In this endeavor, respondent relied on a financial survey prepared by the National Bicycle Dealers Association entitled "The Cost of Doing Business for Independent Bicycle Retailers". The survey found that for the average independent bicycle retailer with total revenue of between $250,000 and $500,000 in 1993 and 1994: (1) The owner of the business took a total salary or draws of 7.1 percent of total revenues, and (2) the shop had a net financial income of 3.8 percent of total revenues. The parties then stipulated that in 1986 the average independent bicycle retailer with total revenue in the $250,000 to $500,000 range also had owner salary or draws of 7.1 percent and net financial income of 3.8 percent of total revenues.

Based on these percentages, respondent computed Bicycle Sport's net profit for tax purposes to be $33,916. This number comprises owner draws of $22,092 (.071 x $311,159), a nondeductible outlay in this context, and net financial income of $11,824 (.038 x $311,159). Stated differently, the survey showed that the average bicycle retailer earned net income for tax purposes of 10.9 percent of sales (7.1 percent + 3.8 percent) and incurred deductible or offsetting expenditures of 89.1 percent (100 percent - 10.9 percent) of sales. Accordingly, here Bicycle

Sport was determined to have net income of $33,916 after subtracting expenses of $277,243 (.891 x $311,159) from the stipulated gross sales.

Petitioner has offered no concrete evidence to establish either that his business diverged from that of the average bicycle retailer or that he incurred specific costs in excess of those taken into account by respondent's method of reconstruction. Rather, petitioner has offered testimony, tangential at best, regarding his standard of living, on the premise that "My standard of living did not, has not, never has reflected the amount of income that they alleged, either originally or now". He has also relied on unsupported assertions that his business operated at a loss, such as that in the following brief colloquy:

> THE COURT: All right. You went for 6 years without making any money? Is that what you're saying?
>
> MR. COHEN: Yes, sir, absolutely.

In these circumstances, we conclude that respondent has employed a reasonable method for reconstructing petitioner's Schedule C income for 1986 and that petitioner has failed to carry his burden of showing such method to be in error. As the Court of Appeals for the Ninth Circuit has expressly stated: "Courts have long held that the IRS may rationally use statistics to reconstruct income where taxpayers fail to offer accurate

records." Palmer v. IRS, 116 F.3d at 1312. Petitioner must report business income from Bicycle Sport of $33,916 for the 1986 taxable year.

B. 1988, 1990, and 1992

For the 1988, 1990, and 1992 taxable years, the Schedules C submitted by petitioner reflected gross sales from Bicycle Sport of $584,120, $731,881, and $617,273, respectively. After offsets and deductions, petitioner reported a net loss of $78,316 in 1988, a net profit of $15,380 in 1990, and a net loss of $7,105 in 1992. Petitioner has at no time provided books and records to document the calculation of these amounts.

With respect to these years, respondent was able to obtain the financial records necessary to perform a bank deposits analysis. The use of the bank deposits method for computing unreported income has long been sanctioned by the courts. Factor v. Commissioner, 281 F.2d 100, 116 (9th Cir. 1960), affg. T.C. Memo. 1958-94; Clayton v. Commissioner, 102 T.C. 632, 645 (1994); DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Underlying this method is the principle that bank deposits constitute prima facie evidence of income. Clayton v. Commissioner, supra at 645; DiLeo v. Commissioner, supra at 868; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). A bank deposits analysis must generally encompass the following: (1) A totaling of bank deposits; (2) the elimination from such total of

any amounts derived from duplicative transfers or nontaxable sources of which the Commissioner has knowledge; (3) the further reduction of the adjusted total by any deductible or offsetting expenditures of which the Commissioner is aware. Clayton v. Commissioner, supra at 645-646; DiLeo v. Commissioner, supra at 868.

As previously indicated, the burden here rests on petitioner to show error in respondent's analysis, either by proving a nontaxable source for deposits or by substantiating allowable expenditures. Rule 142(a); Clayton v. Commissioner, supra at 645; Estate of Mason v. Commissioner, 64 T.C. 651, 656-657 (1975), affd. 566 F.2d 2 (6th Cir. 1977). In some circumstances (e.g., fraud cases), the Commissioner may be expected to investigate leads of nontaxable sources that are "reasonably susceptible of being checked." Holland v. United States, 348 U.S. 121, 135-136 (1954); see also Tunnell v. Commissioner, 74 T.C. 44, 57-58 (1980), affd. 663 F.2d 527 (5th Cir. 1981). However, this "lead-check rule" has been held inapplicable where the taxpayer bears the burden of proof or where purported leads are vague and unsupported by any evidence. Tunnell v. Commissioner, supra at 57-58.

During 1988, petitioner maintained a single business bank account in the name of Bicycle Sport at the Dana Niguel Bank. A second business bank account was opened in the name of Bicycle

Sport on October 18, 1989, at Monarch Bank.  After a period of
inactivity, the Dana Niguel Bank account was closed on June 8,
1990, with a final withdrawal of $2,388.87.  Using records for
these accounts, respondent determined petitioner's net income
from Bicycle Sport as follows:

|                            | 1988         | 1990         | 1992         |
|----------------------------|-------------:|-------------:|-------------:|
| Total Deposits             | $783,228.10  | $741,074.36  | $674,278.00  |
| Less:  Transfers           | 0.00         | 2,388.37     | 0.00         |
| Subtotal                   | 783,228.10   | 738,685.99   | 674,278.00   |
| Less:  Checks & Debits     | 777,215.48   | 760,520.95   | 679,358.26   |
| Subtotal                   | 6,012.62     | -21,834.96   | -5,080.26    |
| Plus:  Owner Draws         | 10,640.00    | 64,400.00    | 52,200.00    |
| Subtotal                   | 16,652.62    | 42,565.04    | 47,119.74    |
| Plus:  Additional Draws    | 0.00         | 8,500.00     | 0.00         |
| Subtotal                   | 16,652.62    | 51,065.04    | 47,119.74    |
| Less:  Gifts, Loans, Etc.  | 0.00         | 0.00         | 0.00         |
| NET INCOME                 | $16,652.62   | $51,065.04   | $47,119.74   |

We consider the sustainability of respondent's analysis
first by addressing whether petitioner has shown entitlement to
further offsetting or deductible expenditures and, second, by
deciding whether petitioner has proven nontaxable sources for the
deposits in the Bicycle Sport accounts.

In performing the above calculations, respondent treated as
deductible business expenses all checks drawn on the Bicycle
Sport accounts except for those determined to be owner draws.
For the majority of these sums characterized as nondeductible
draws, the record contains copies of checks which are made

payable to petitioner, have the word "Draw" written in the space for "Description", and specify a check amount in round hundred-dollar increments. Petitioner does not dispute that these and similar checks totaled $10,640, $64,400, and $52,200 for 1988, 1990, and 1992, respectively. However, for December of 1990, no copies of the checks drawn on Bicycle Sport's account were made available to respondent. Because the bank statements for December showed two checks in even amounts similar to those identified as draws, respondent concluded that these, too, represented nondeductible draws of an additional $8,500.

Petitioner has offered no evidence establishing that the amounts treated as draws should in fact be characterized as deductible expenditures. Rather, petitioner's testimony at trial seems to indicate that these sums were in fact owner draws but that petitioner holds a misguided interpretation of the income tax consequences thereof. For instance, the discussion set forth below illustrates petitioner's apparent position.

> MR. COHEN: I'm saying that some of those came--some of that came from--as a draw on equity, which I'm legally entitled to do as a nontaxable event. If I have that money that I've put into the business, then I'm allowed to take that back out and not declare that as--that doesn't have to necessarily be a taxable event.

*   *   *   *   *   *   *

MR. COHEN:   Not only that, but I'm saying that some of the money that I started the business with, if I started the business with x number of dollars, I'm allowed to draw that x number of dollars out, without it being income.

THE COURT:  Well, that's your version.  You can draw it out, but it's subject to income tax.  The business has to pay--

\*     \*     \*     \*     \*     \*     \*

THE COURT:  I mean, you don't just arbitrarily draw money out of a business account and say, well, this is equity, I don't have to worry about the tax due on it.  You can't--that's just not the way things operate.

Given this testimony, we have no basis on which to conclude that the amounts treated as draws in respondent's bank deposits analysis represent deductible expenditures.  Petitioner has not so much as alleged any specific business expenses that were omitted from respondent's calculations.  Hence, petitioner has failed to prove his entitlement to any reduction in the net business income determined by respondent on account of additional costs incurred by Bicycle Sport.

We next turn to whether such net income should be decreased to reflect nontaxable sources for the funds deposited in the Bicycle Sport accounts.  On several occasions during the examination and at trial, petitioner alluded to potential nontaxable sources in the form of inheritances, gifts, and loans from family members and a friend, Anthony Turley.  However, none of these receipts have been substantiated.  The minimal record

which relates thereto is vague as to both timing and amount. Mr. Cavender inquired during the examination of petitioner's parents regarding alleged loans and/or gifts, but petitioner's parents could not recall when or how much was remitted to petitioner. Mr. Turley likewise admitted that he was unsure of the dates when any particular loans were made. When questioned at trial regarding a claimed 1987 inheritance from his grandmother, petitioner indicated that the funds were used at least in part to buy a condominium. Similarly, an alleged loan from petitioner's sisters was linked to the purchase of a home. Significantly, petitioner never asserted that these nontaxable sums were deposited in Bicycle Sport's accounts.

We conclude that petitioner has not proven any of the deposits into the Bicycle Sport accounts, other than the single transfer identified by respondent, to be attributable to nontaxable sources. (We also note, for the sake of completeness and because the parties have made assertions with respect thereto, that this record reveals no reasonably definitive leads which respondent failed to check.) We hold that petitioner must report business income from his sole proprietorship in the amounts of $16,652.62, $51,065.04, and $47,119.74 for the years 1988, 1990, and 1992, respectively, in accordance with respondent's bank deposits analysis.

C.  1989 and 1991

For the 1989 and 1991 taxable years, the Schedules C submitted by petitioner reported gross sales in the respective amounts of $711,728 and $541,005.  After reduction for costs and expenses, Bicycle Sport was shown as having earned a net profit of $124,325 in 1989 and $77,258 in 1991.  Respondent has accepted these figures as representing petitioner's net business income for such years, due in part to a lack of complete records for performance of a bank deposits analysis.  Since petitioner has never specifically addressed these years in his generalized arguments to the Court, we likewise hold petitioner to the amounts stated on his own returns.

III.  Capital Gain

As a general rule, a taxpayer is required on the disposition of property to report as capital gain the excess of the amount realized on disposition over his or her adjusted basis in the property.  Sec. 1001.  On petitioner's 1989 and 1990 returns, he reported capital gain from the sale of stock in the amounts of $10,490 and $9,227, respectively.  The attached Schedules D, Capital Gains and Losses, each show a sales price equal to the full amount reported as gain and neither reflect nor deduct therefrom any "Cost or other basis".  At trial, however, petitioner seemed to contend, albeit rather obliquely, that he was entitled to offset his reported gains by some amount other

than a zero basis.  Nonetheless, he did not offer any specific figures in his testimony and did not produce any documentation regarding how, when, or at what prices he obtained the shares. Thus, absent any data in the record which would support a recalculation of petitioner's capital gains, we hold petitioner to the $10,490 and $9,227 figures stated on his returns.

IV.  Filing Status

The filing status of an individual for income tax purposes is determined as of the close of the taxable year.  Sec. 7703(a)(1).  In applying this rule, however, an individual legally separated from his or her spouse will not be considered as married.  Sec. 7703(a)(2).  Here there appears to be a dispute between the parties regarding whether petitioner's filing status for 1992 should be single or married filing separate.

The parties have stipulated that petitioner was married on August 19, 1990; that he and his wife separated on January 15, 1993; and that the couple did not file joint returns in 1990, 1991, or 1992.  Accordingly, respondent has acknowledged on brief that petitioner's filing status was single for tax years prior to 1990.  In addition, the parties have stipulated that petitioner's filing status was married filing separate in 1990 and 1991.  It is respondent's position that married filing separate is the appropriate status for 1992 as well.  Petitioner, on the other hand, has refused to agree to a stipulation to such effect.  Yet

he has also declined to provide any argument whatsoever related to his filing status and relationship with his wife.  Therefore, since there is no evidence in the record that petitioner and his wife were separated before January of 1993, we hold that petitioner's status for 1992 is married filing separate.

## V.  Standard Deduction or Itemized Deductions

An individual who does not elect to itemize his or her deductions is entitled to the standard deduction specified for his or her filing status.  Sec. 63(b) and (c).  Petitioner did not elect to itemize on his 1986, 1988, or 1989 returns, and respondent does not disagree with such treatment.  For 1990, 1991, and 1992, petitioner claimed itemized deductions of $22,710, $25,143, and $24,663, respectively, attributable solely to alleged home mortgage interest.  Because respondent has conceded that petitioner is entitled to deduct the interest reported for 1991 and 1992, subject to computational statutory limits thereon, only the 1990 deductions remain at issue.  Respondent asserts that petitioner has not substantiated his interest payments for 1990, and once again the record is devoid of any evidence provided by petitioner on this matter.  We sustain respondent's position in affording petitioner only the standard deduction for 1990.

## VI.  Section 6651(a)(1) Addition to Tax

Section 6651(a)(1) imposes an addition to tax for delinquency in filing returns and provides in relevant part as follows:

> SEC. 6651.  FAILURE TO FILE TAX RETURN OR TO PAY TAX.
>
> (a) Addition to the Tax.--In case of failure-
>
> (1) to file any return required under authority of subchapter A of chapter 61 * * * , on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.

The Supreme Court has characterized the foregoing section as imposing a civil penalty to ensure timely filing of tax returns and as placing on the taxpayer "the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause'", in order to escape the penalty.  United States v. Boyle, 469 U.S. 241, 245 (1985).  "Willful neglect" denotes "a conscious, intentional failure or reckless indifference."  Id.  "Reasonable cause" correlates to "ordinary business care and prudence".  Id. at 246 & n.4; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Section 6012(a)(1)(A) further delineates that an individual is required to file a tax return for any year in which his or her gross income exceeds the sum of the applicable exemption amount and standard deduction for such taxpayer. In this context, gross income includes "Gross income derived from business", sec. 61(a)(2), which in turn is defined as "total sales, less the cost of goods sold," plus certain other items, sec. 1.61-3(a), Income Tax Regs. Business expenses, as distinct from cost of goods sold, are not subtracted in ascertaining gross business income. Id.

Here, petitioner did not file tax returns for 1986, 1988, 1989, 1990, 1991, and 1992 until October of 1998. Such returns were untimely by a large margin. See sec. 6072(a). Furthermore, the returns, even as filed, reflect substantial gross income derived from Bicycle Sport and thus clearly place petitioner over the filing threshold.

Petitioner, however, has fallen far short of establishing reasonable cause for his repeated failure to file timely tax returns. Other than vague references to loss of records and perhaps the misguided belief that he owed no taxes, petitioner has not offered any explanation for his delinquency. We therefore hold that petitioner is liable for the section 6651(a)(1) addition to tax for each of the taxable years at issue.

VII.  Section 6654 Addition to Tax

Section 6654(a) provides for an addition to tax in the case of any underpayment of estimated tax by an individual.  Where payments of tax, through either withholding or the making of estimated quarterly tax payments, do not equal the percentage of total liability required under the statute, imposition of the addition is automatic and mandatory, unless one of the statutory exceptions enumerated in section 6654 is shown by the taxpayer to apply.  Sec. 6654(a)-(e), (g); Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).  Since petitioner paid no estimated taxes and has offered no evidence indicating any of the exceptions to be applicable here, we sustain respondent on this issue for each of the taxable years under consideration.

To reflect the foregoing and the parties' concessions,

Decision will be entered under Rule 155.