T.C. Summary Opinion 2005-29

UNITED STATES TAX COURT

VITTORIO KELLUM, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4928-02S.                    Filed March 22, 2005.

Vittorio Kellum, pro se.

<u>Lorraine Wu</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect at relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's 1997 Federal income tax of $5,476, plus additions to tax. After concessions by respondent, the remaining issues for decision are: (1) Whether certain payments received by petitioner in 1997 are excludable from gross income under section 104(a); (2) whether petitioner is entitled to an additional charitable contributions deduction pursuant to section 170 that was not otherwise conceded by respondent; (3) whether petitioner is entitled to a casualty loss deduction under section 165 stemming from a 1997 automobile accident; (4) whether petitioner is entitled to deduct, under section 162 or 183, various expenses related to his insurance activity; and (5) whether petitioner is liable for additions to tax for failure to file a timely tax return under section 6651(a)(1) and for failure to make estimated tax payments under section 6654(a).[1]

Some of the facts have been stipulated, and they are so found. The stipulation of facts, supplemental stipulation of facts, and the attached exhibits are incorporated by this

---

[1] Respondent conceded prior to trial that petitioner is entitled to the following itemized deductions: (1) Medical expenses of $257.74; (2) personal property taxes of $1,450.11; (3) charitable contributions of $450; (4) unreimbursed employee business expenses of $436.75; (5) investment expenses of $513.63; and (6) legal expenses of $1,311.25. Petitioner is also entitled to a deduction for home mortgage interest paid of $6,809, as reported by Temple-Island Mortgage.

reference.  At the time of filing the petition, petitioner resided in Los Angeles, California.

## Background

Petitioner did not file a Federal income tax return for 1997.[2]  On November 1, 2001, respondent issued to petitioner a notice of deficiency in which respondent determined a deficiency and additions to tax for petitioner's 1997 tax year. Respondent's determination was based on information returns received from third-party payors.  The following amounts were reported as paid to petitioner in 1997:

| Payor | Type of Payment | Amount Paid |
|---|---|---|
| Compton Unified School District | Wages | $27,325 |
| Merrill Lynch et al. | Stocks/bonds sale | 2 |
| Merrill Lynch et al. | Stocks/bonds sale | 17 |
| Merrill Lynch et al. | Stocks/bonds sale | 19 |
| Merrill Lynch et al. | Stocks/bonds sale | 401 |
| Merrill Lynch et al. | Stocks/bonds sale | 694 |
| Merrill Lynch et al. | Dividends (ordinary) | 22 |
| Wells Fargo Bank | Interest | 16 |
| American Network Ins. Co. | NEC income (nonemployee compensation) | 31 |
| Mitchell Energy Corp. | Royalties | 7,220 |
| R.W. Durham | NEC income (nonemployee compensation) | 1,427 |

Petitioner does not dispute receiving the payments reflected above.  With respect to the various proceeds from stock and bonds sales reported by Merrill Lynch, Pierce, Fenner & Smith, Inc.,

---

[2]  Petitioner mailed to respondent a Federal income tax return for 1997 on May 18, 2004, one day before the date of his trial.  A copy of the return was admitted at trial solely for the purpose of assisting petitioner in developing his arguments and claims for various deductions.

petitioner substantiated his cost basis in the underlying investments and respondent conceded at trial that petitioner is entitled to a net capital loss of $771.  In addition, petitioner acknowledged receiving payments from Compton Unified School District (Compton Unified) in the neighborhood of $27,325, but claims that most of these payments were received as workers' compensation benefits.

With regard to the issues for decision, we address each item separately and, for convenience, we combine our findings of fact and conclusions.

## Discussion

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of showing that the determinations are in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Pursuant to section 7491,[3] the burden of proof as to factual matters shifts to respondent under certain circumstances.  Petitioner has neither alleged that section 7491(a) applies nor established his compliance with the requirements of section 7491(a)(2)(A) and (B) to substantiate items, maintain records, and cooperate fully with

[3] Sec. 7491 applies to court proceedings arising in connection with examinations commencing after July 22, 1998. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.  It appears that the examination of petitioner's 1997 tax return commenced after the effective date of sec. 7491.

respondent's reasonable requests.  For similar reasons, section 6201(d) does not apply to place on respondent the burden of producing evidence to supplement the information returns.  See McQuatters v. Commissioner, T.C. Memo. 1998-88.

A.  Income From Compton Unified

Petitioner began working as a math and science teacher for Compton Unified in September 1995.  Sometime about February 15, 1996, petitioner was injured during an altercation with a student while teaching at Whaley Middle School.  Petitioner suffered a back injury and was unable to teach his classes for the remainder of the spring 1996 school term.  Petitioner was granted "industrial accident leave" from February 16 until June 12, 1996, and continued to receive his full salary.

Petitioner returned to teaching in September 1996 for the beginning of the 1996-97 school year.  Due to continuing concerns over his health, petitioner returned as a substitute teacher on a temporary contract and was assigned to the district's substitute pool.  Certified quarterly earnings reports prepared by Compton Unified reflect that petitioner received a monthly salary of $2,626.81 from January 1997 through June 1997 and $2,895.77 for September 1997 through December 1997.[4]  Compton Unified's

---

[4]  No Federal income taxes were withheld from petitioner's salary during this time.  Compton Unified's payroll administrator testified that petitioner was classified as an "exempt individual", but did not further explain the basis for the
(continued...)

timesheets show that petitioner reported to the substitute pool on a continuous and regular basis in 1997. According to the timesheets, petitioner was either at work or took sick leave throughout taxable year 1997.

Petitioner, however, testified that his back injury prevented him from working for Compton Unified after March 15, 1997, and that any payments he received after that date were in the nature of workers' compensation benefits. On April 9, 1997, petitioner filed for workers' compensation benefits with the State of California, Division of Workers' Compensation, claiming a back injury due to "continuous physical stress and strain" occurring between September 1996 and March 15, 1997. On May 31, 2001, a Workers' Compensation Judge with the Workers' Compensation Appeals Board for the State of California awarded petitioner a permanent disability indemnity in the amount of $18,827.50 for the period beginning January 15, 1997. There is no evidence that petitioner received any workers' compensation payments from the State of California in 1997.

In addition, petitioner received disability compensation from Southern California Risk Management Associates, Inc. (SCRMA) in 2000. In a letter from SCRMA, dated March 30, 2000, SCRMA stated that it was enclosing a check in the amount of $6,858 as

"your permanent disability benefits from 01/01/97 through 10/27/97." It is unclear from this record whether SCRMA is associated with petitioner's workers' compensation claim with the State of California or whether it is associated with Compton Unified's group insurance plans.

Gross income includes all income from whatever source derived, unless excludable by a specific provision of the Internal Revenue Code. Sec. 61(a). One exclusion from gross income can be found at section 104(a)(1) for "amounts received under workmen's compensation acts as compensation for personal injuries or sickness". Another exclusion can be found at section 104(a)(3) for amounts received through accident or health insurance for personal injuries or sickness, except if such amounts are (a) attributable to contributions by the employer which were not includable in the gross income of the employee, or (b) are paid by the employer. See also sec. 105(a).

Taxpayers reporting income on the cash method of accounting, such as petitioner, must include an item of income for the taxable year in which the item is actually or constructively received. See sec. 451(a); see also Polone v. Commissioner, T.C. Memo. 2003-339; Knoll v. Commissioner, T.C. Memo. 2003-277 (applying this principle in the context of a section 104 case).

The record does not support petitioner's claim for exclusion. Petitioner applied for workers' compensation benefits

with the State of California on April 9, 1997, but was not awarded any benefits until May 31, 2001. Petitioner also was awarded disability payments stemming from his 1997 back injury from SCRMA, but the record shows that these payments were made in 2000. Amounts received are included in gross income for the taxable year in which they are received. Sec. 451(a); Polone v. Commissioner, supra; Knoll v. Commissioner, supra. Therefore, payments received in 2000 and 2001 are not to be considered in petitioner's 1997 tax year.

As indicated, for taxable year 1997, certified payroll records from Compton Unified demonstrate that petitioner reported for duty throughout 1997 and was paid his regular salary without any kind of special injury or illness status. Petitioner did not present any credible evidence to prove that he did not work after March 15, 1997.

For the reasons stated above, we sustain respondent's determination that petitioner must include $27,325 of wages in gross income for 1997.

B. Charitable Contribution Deduction

Petitioner claims a deduction for charitable contributions of $4,110 for 1997. Respondent conceded that petitioner is entitled to a charitable contribution deduction of $450. The parties dispute whether petitioner is entitled to a deduction in

the amount of $3,660 for contributions to the Greater Sunrise Baptist Church.

Section 170 allows a deduction for charitable contributions made for religious purposes. For contributions of money, taxpayers must maintain canceled checks, receipts from the donee organizations showing the date and amounts of the contribution, or other reliable written records showing the name of the donee, date, and amount of the contribution. See sec. 1.170A-13(a)(1), Income Tax Regs. Petitioner bears the burden of proving he is entitled to deductions claimed. See Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Petitioner produced a photocopy of a "contribution receipt" from the Greater Sunrise Baptist Church dated December 30, 1997, showing contributions in 1997 of $3,660.[5] The receipt was generated by a computer word processing program and was not printed on an official letterhead of the church. The photocopy bears the purported signature of "Rev. A.W. Crowder" and contains the purported stamped seal of the church. It is unclear from the receipt whether petitioner donated the entire $3,660 on December 30, 1997, or whether petitioner made periodic donations during

---

[5] The receipt was submitted to the Court by a posttrial Supplemental Stipulation of Facts. Respondent objected to the admissibility of the receipt on the ground of authenticity. We overrule that objection and admit the receipt as we conclude that the receipt has some probative value. See Rule 174(b).

the year totaling $3,660.  Petitioner did not present testimony with respect to the claimed contributions.

Under certain circumstances, where a taxpayer's records are inadequate to substantiate a claimed deduction, we may estimate the amount.  Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930).  In order for the Court to make an estimate, we must have some basis in fact upon which an estimate can be made.  Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

While we have some doubt about the reliability of the contribution receipt and the amount of petitioner's contributions, we find that petitioner attended church and made some contributions to the church in 1997.  Bearing in mind that petitioner has the burden to prove that he is entitled to the claimed deduction, we hold that petitioner is entitled to an additional deduction of $800 for donations to the Greater Sunrise Baptist Church.  Thus, petitioner is entitled to a total charitable contribution deduction of $1,250 for 1997 (including the $450 previously conceded by respondent).

C.  Casualty Loss From Automobile Accident

Petitioner claims a casualty loss of $11,418 for damages sustained to his 1992 Toyota Camry during an automobile accident with an insured driver on March 17, 1997.  Following the accident, petitioner filed a claim with the other driver's

insurance company.  On June 18, 1997, petitioner received a letter from the Coast National Ins. Co., Inc., which stated that his claim had been assigned to an adjuster and was currently being investigated.

Section 165(a) allows a taxpayer to deduct losses that are "sustained during the taxable year and not compensated for by insurance or otherwise".  For an individual taxpayer, if a loss is not incurred in connection with a taxpayer's trade or business or in a transaction entered into for profit, the taxpayer may deduct the loss only if it arises from a fire, storm, shipwreck or other casualty, or from theft.  Sec. 165(c)(3).  In the case of a casualty loss, if there exists a claim for reimbursement for which there is a reasonable prospect of recovery, no portion of the loss may be deducted until it can be ascertained with reasonable certainty whether or not such reimbursement will be received.  Sec. 1.165-1(d)(2)(i), Income Tax Regs.

There was no further evidence in the record regarding the settlement of the insurance claim or the timing of any insurance reimbursement.  Since there was an insurance claim representing a reasonable prospect of recovery in 1997, and there is no evidence to show whether or not petitioner received any insurance reimbursement in 1997, or in a later year, petitioner is not entitled to a casualty loss deduction under section 165(a).  See Commissioner v. Harwick, 184 F.2d 835 (5th Cir. 1950), affg. a

Memorandum Opinion of the Court; Radding v. Commissioner, T.C. Memo. 1988-250; sec. 1.165-1(d)(2)(i), Income Tax Regs.

D.  Business Expenses

Petitioner received nonemployee compensation of $1,427 from R.W. Durham and $31 from American Network Ins. Co. in 1997. Petitioner claims that he operated an insurance business under the name of Kellum & Associates in 1997 and that the $1,458 represents gross receipts or sales reportable on a Schedule C, Profit or Loss From Business.  Petitioner claims $2,440 in business expense deductions from his insurance activity and submitted an assortment of receipts and credit card statements of various expenses including car rentals, restaurant receipts for meals, and a cell phone.

Section 162 provides that a taxpayer who is carrying on a "trade or business" may deduct ordinary and necessary expenses incurred in connection with the operation of the business.  To be engaged in a trade or business within the meaning of section 162, "the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit". Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  If the taxpayer is not engaged in a trade or business under section 162, the taxpayer may generally deduct the expenses related to an activity "not engaged in for profit" only to the extent of the

gross income derived from the activity for the taxable year. Sec. 183(a) and (b)(2).

As with other deductions discussed herein, petitioner bears the burden of proving he is entitled to claimed business deductions. See Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). A taxpayer is required to maintain records sufficient to substantiate deductions that he or she claims on his or her tax return. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Section 274(d) provides a strict substantiation requirement for certain expenses related to travel (including meals and lodging while away from home), entertainment, gifts, and certain types of property such as a passenger automobile, a computer or peripheral equipment, or a cellular telephone or similar telecommunication equipment.[6] Under section 274(d), a deduction is not allowed unless the taxpayer is able to substantiate the expense by adequate records or by sufficient evidence corroborating the taxpayer's own statement establishing the amount, time, place, and business purpose of the expense.

Irrespective of whether petitioner's insurance activity qualifies as a "trade or business" under section 162 or whether petitioner's expenses are deductible under section 183, petitioner has failed to properly substantiate his claimed

---

[6] Sec. 274(d) overrides the principle established in Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), that the Court may estimate expenses in some circumstances.

business expenses under section 274(d). While petitioner submitted various rental car receipts, restaurant receipts, and credit card statements, he has failed to introduce any evidence to establish a business purpose for the claimed expenses.[7] There is no evidence such as calendar entries or other contemporaneously prepared logs to substantiate that these expenses were directly connected with petitioner's insurance activity. Further, the credit card statements were in petitioner's individual name, and not his company's name. Accordingly, we hold that petitioner is not entitled to deduct expenses in connection with his insurance activity.

E.  Additions to Tax

1.  Section 6651(a)(1)

Section 6651(a)(1) provides an addition to tax for a failure to file a return on or before the specified filing due date unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Once the Commissioner meets his initial burden of production to show that the addition to tax is appropriate, the taxpayer bears the burden of proving his failure to file timely the required return did not result from willful neglect and that the failure was due to reasonable cause. Higbee v. Commissioner, 116 T.C. 438, 447 (2001).

---

[7] The receipts were submitted to the Court in a posttrial supplemental stipulation of facts. Petitioner did not provide any testimony of their business purpose at trial.

Petitioner did not file a return for 1997.  Petitioner made no showing that his failure to file was due to reasonable cause and not willful neglect.  Respondent's determination in regard to the section 6651(a)(1) addition to tax is sustained.

2.  Section 6654(a)

Section 6654(a) provides for an addition to tax in the case of an underpayment of estimated tax.  Once the Commissioner meets his initial burden of production to show that the addition to tax is appropriate, the section 6654(a) addition to tax is mandatory unless petitioner shows that one of the statutorily provided exceptions applies.  See sec. 6654(e); Higbee v. Commissioner, supra at 447; Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).

As relevant to this discussion, section 6654(e) provides two mechanical exceptions to the applicability of the section 6654 addition to tax.  First, the addition is not applicable if the tax shown on the taxpayer's return for the year in question (or, if no return is filed, the taxpayer's tax for that year), reduced by any allowable credit for wage withholding, is less than $500. Sec. 6654(e)(1).  Second, the addition to tax is not applicable if the taxpayer's tax liability for the preceding taxable year was zero.  Sec. 6654(e)(2).

Petitioner did not file a 1997 return, did not have Federal income taxes withheld from his wages, and made no estimated tax

payments in 1997. As such, respondent has satisfied his initial burden of production to show that the section 6654(a) addition to tax is appropriate. The burden of proof, including the burden to establish the applicability of any exceptions, remains on petitioner. See Higbee v. Commissioner, supra at 446; Spurlock v. Commissioner, T.C. Memo. 2003-248. Petitioner has not shown that any of the statutory exceptions are applicable. The section 6654(e)(1) exception does not apply because petitioner's tax for 1997 is greater than $500. The section 6654(e)(2) exception does not appear to apply because his tax liability for 1996 was not zero, as the record shows that petitioner earned wage income in 1996.

Respondent's determination in regard to the section 6654(a) addition to tax is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be

entered under Rule 155.